PEARL S. KUVIN, PROSECUTOR, v. CITY OF NEWARK AND VINCENT J. MURPHY, RECEIVER, RESPONDENTS.

Submitted May 5, 1942—Decided September 28, 1942.

Before Justices Case, Donges and Colie.

For the prosecutor of the rule, *Herbert A. Kuvin.*

For the respondents, *Raymond Schroeder* and *Thomas L. Parsonnet.*

The opinion of the court was delivered by

Case, J.    This is the return of a rule to show cause why either a peremptory or an alternative writ of *mandamus* should not issue directing the City of Newark and Vincent J. Murphy, receiver, to cancel the third and fourth quarters of the 1941 taxes as shown on a tax bill covering the property of prosecutor in the City of Newark.    Prosecutor took title, on or about July 25th, 1941, in partial reliance upon an official certificate of search for municipal liens.    The property so acquired, and upon which the disputed tax was levied, consisted of a plot of land with a newly erected house thereon. The certificate attested, as of July 10th, 1941, that the acting comptroller had searched the records in his office for unpaid taxes and assessments affecting the property and had found that no unpaid taxes and assessments theretofore levied, assessed or made by and on behalf of said city existed against said lands and real estate.    The certificate further bore notice that the taxes for 1941 were *payable quarterly,* February 1st, May 1st, August 1st and November 1st, and would constitute a lien on and after December 1st, 1941.    Another paper upon which prosecutor says she relied in taking title was an official tax receipt, produced at the closing, certifying that the first quarter taxes, $16.97, due February 1st, 1941, and the second

quarter taxes, $16.98, due May 1st, 1941, had been paid. The receipted tax bill bore this notation: "This preliminary bill is for the first half year's tax only. An adjusted bill for the entire year's tax will be forwarded later." It may be conveniently noted here that prosecutor, in receiving and relying upon the two municipal certifications, was thus put on notice that the taxes were payable quarterly on the ·named dates, that the bill against which the receipt ran was only a preliminary bill and was of such a nature that some adjustment would appear on the yearly tax bill to be forwarded later. The expressions "first quarter payment," "second quarter payment," and so on, do not refer to equal quarter parts of the tax amount but to the quarter yearly periods at which the tax installments come due. In the month of October, 1941, it was brought to prosecutor's attention that the city had, at some unnamed time, presumably after the closing of title, rendered a bill "for the third and fourth quarters for the year" showing that the total tax for the year was $327.75, less the sum of $33.95 already paid. The explanation for the great difference in the amounts for the two half-year periods was that the preliminary bill, viz., the bill for the first and second installments, in accordance with the statute (*infra*), was based on the 1940 assessments made when there were no improvements, whereas the assessment for 1941 included the house. The question of whether or not the 1941 assessment *should* have included the house is not properly before us.

The statutory provisions relied upon by prosecutor for the relief sought are *R. S.* 54:5-11 and succeeding paragraphs which provide that the properly designated officer shall have power to make official searches for municipal liens and that upon receipt for the appropriate fee the officer "shall make an examination of the records of the municipality, and, * * * issue a certificate certifying the taxes, assessments or other municipal liens or charges, levied or assessed against the property described in the application, which are liens thereon at the date of the certificate. He shall include therein all unpaid installments of assessments theretofore levied and

in force, whether due or not;" and, further, that "a person who shall acquire for valuable consideration an interest in lands covered by an official tax search, in reliance on that search, shall hold such interest free from any municipal lien held by the municipality not shown on that search." Prosecutor's claim must be grounded in that statute or fail.

It is prosecutor's contention that the municipal certificate of tax search should have shown the 1941 assessment, viz., the value of the property as assessed by the assessor, and that since it did not so show she should be permitted to retain her fee in the land free from a municipal lien for the unpaid portion of the 1941 tax. (*R. S.* 54:5-17, the statutory provision last above quoted.) In precise words it is her contention that it was the duty of the City of Newark to have "set forth in the tax search in effect as follows: 'Subject to taxes for the year 1941, land assessed at $900, building assessed at $4,800, payment to be made in quarterly installments as adjusted on the second half tax bill.'" We think that her contention is unsound and that the point of her departure from sound reasoning is in a mistaken understanding of the word "assessments" as used in the statute concerning municipal searches. In our tax law the word "assessment" is used to refer to two entirely different concepts; usually either the inherent matter or the context will clearly indicate the intended meaning. In its initial meaning the word refers to the valuation which is given to property by the municipal assessor as a basis for the application of the tax rate and the ascertainment of the tax—an annual procedure to which, speaking generally, all property is subjected. The annual assessment precedes and is complementary to the annual tax. It is that sort of an assessment that enters the present case. Secondarily the word is used to describe an imposition in the nature of a tax, and we shall not attempt to give a definition except loosely by illustration in saying that when a municipality undertakes a local improvement conferring benefits specially upon certain properties the resulting charge specially laid against a property so benefited, to be applied toward the cost of the improvement, is called an assessment; and an assess-

ment may become due in installments, as, for instance, annually over a definite number of years, depending upon circumstances. Reading back to our quotation *supra* from the statute relating to municipal searches, it is clear that the phrase "certifying the taxes, assessments or other municipal liens or charges" uses the word "assessments" in the sense described secondarily above. Assessments made by our assessors as the groundwork for the annual taxes are not liens or charges, whereas the context makes clear that the assessments here referred to are "liens or charges." A further illuminating statutory provision is to be found immediately preceding the matter relative to municipal searches. *R. S.* 54:5-6 and the next succeeding section provide (italics inserted) :

"All unpaid *taxes* on lands, with interest, penalties, and costs of collection *shall be a lien* on the land on which they are assessed on and after December first of the year in which they fall due.

"All *assessments for benefits* for municipal improvements *shall be a lien* on the land on which they are assessed on and after the date fixed in the laws authorizing the assessment, or if no date is so fixed, then on and after the date on which they are payable."

Further, there are months, at the beginning of each year, when the assessments laid by the assessors as the basis for the year's taxes are out of the possession of the municipal officers and in the hands of the respective county boards of taxation. (*R. S.* 54:4-35; 54:4-55.) It would be impossible for any municipal officer to certify valuations during that period.

The whole drift of the statute is opposed to prosecutor's theory that the municipal officer in certifying the search was called upon to certify the assessment of valuation as shown on the assessor's duplicate. So far as appears the full 1941 tax had not, on July 10th, 1941, been calculated or levied. There was no municipal lien or charge on the property when the certificate was issued. Consequently the statute relied upon affords no remedy. The writ must be refused.

*Go-Lit Realty Co.* v. *Jersey City,* 120 *N. J. L.* 592, cited by prosecutor, is not, we think, pertinent to the facts of the present case. That adjudication dealt with an attempt by the municipal authorities to collect taxes for the years 1935 and 1936, notwithstanding an official tax search certificate, issued January 7th, 1937, which certified that there were then no unpaid taxes or assessments upon the premises.

We do not understand the effect which prosecutor seeks to gain, in an action to vindicate an alleged right under the Tax Search Law, from a receipt for payment of the bill for the first and second quarter year preliminary tax; a payment for which she is given full credit. But whatever the point may be, the procedure seems to have been in full compliance with the authorizing statute (*R. S.* 54:4-66 (c)), which follows:

"The dates hereinbefore provided for payment of the first and second installments of taxes being before the true amount of the tax will have been determined, the amount to be payable as each of the first two installments shall be one-quarter of the total tax finally levied against the same property or taxpayer for the preceding year, and the amount to be payable for the third and fourth installments shall be the full tax as levied for the current year, less the amount charged as the first and second installments; the amount thus found to be payable as the last two installments shall be divided equally for and as each installment. An appropriate adjustment by way of discount shall be made, if it shall appear that the total of the first and second installments exceeded one-half of the total tax as levied for the year."

To conclude: The word "assessments" as used in *R. S.* 54:5-12 does not relate to the assessing of values preliminary to the imposition of taxes; the third and fourth tax installments on prosecutor's property were not liens on the property at the date of the certificate within the statutory terminology. Prosecutor is not entitled to either a peremptory or an alternative writ of *mandamus.*

The rule to show cause will be discharged, with costs.