2 N.J. Tax 103 (1981)
SUSAN BELLES, PLAINTIFF,
v.
EAST AMWELL TOWNSHIP, DEFENDANT.
Tax Court of New Jersey.
January 5, 1981.
*105 Thomas B. Mading for plaintiff.
George M. Dilts for defendant (Bernhard, Durst & Dilts, attorneys).
CONLEY, J.T.C.
This case deals with the responsibility of a municipal tax search officer to disclose municipal tax liens to a prospective purchaser of property when the officer issues a tax search certificate pursuant to N.J.S.A. 54:5-12. The issue is whether omitted property tax assessments certified in October 1977 for the 1976 and 1977 tax years were municipal liens which defendant taxing district is now precluded from enforcing against plaintiff pursuant to N.J.S.A. 54:5-17 because the assessments were not shown on the official tax search issued to plaintiff on August 17, 1977.
The issue is presented by an uncomplicated set of facts. Plaintiff purchased her home on September 30, 1977 for $53,000. In connection with her purchase, she ordered a search for municipal liens pursuant to Chapter 5 of Title 54 of the Laws of New Jersey. Prior to closing of title, the tax collector and official tax search officer of defendant township advised plaintiff *106 that the subject property was assessed in 1977 for $34,000, that taxes had been paid for the first three quarters of 1977, and that fourth quarter taxes were due on November 1, 1977. At closing, an appropriate tax adjustment was made between the seller and plaintiff with respect to the 1977 taxes reflected on the tax search. See N.J.S.A. 54:4-56. Subsequent to closing, defendant's tax collector wrote to plaintiff's attorney by letter dated October 5, 1977, enclosing a copy of a 1976 omitted assessment tax bill in the amount of $585.20 and a 1977 added assessment tax bill in the amount of $503.69. The letter from the tax collector contained the following statement:
When the tax search was certified in August, 1977 we had no knowledge of an added or omitted assessment. The Change Orders on file in this office are dated September 5, 1977, but these Change Orders from our Assessor are never used to supply information on an Official Tax Search because they are not yet approved by the County Board of Taxation.
When plaintiff's attorney questioned the imposition of taxes not disclosed on the official tax search, defendant's tax assessor wrote to plaintiff's attorney on November 10, 1977 that notification of the assessor's intent to impose an omitted and added assessment on the subject property had been sent to the owner of record in August 1977. The assessor further stated that the taxes had been levied on the added and omitted tax lists as of October 1, 1977.
At trial it was established that the assessor had increased the assessment on the subject property for 1976 and 1977 from $34,000 to $54,900. He did so because he discovered that work had been done on the house and barn for which no additional assessment had ever been imposed. The work had been done in May 1973 to the house and in June 1974 to the barn. In explaining the delay in imposing additional assessments for these improvements, the assessor testified that he had had difficulty obtaining notices of building perimits and certificates of occupancy or completion from the local building inspector for the period from 1973 to 1977. For reasons which were not explained, the assessor received "an appreciable number of these notices" in 1977 and "proceeded to follow up" on them. As a result, after an initial effort to gain access to the subject *107 property in early 1977, the assessor visited the property on August 17, 1977 and decided to increase the assessment on the property's buildings. Ironically, this was the date the tax search officer issued the tax search to plaintiff. Subsequently, the omitted assessments were certified. Plaintiff appealed the new assessments to the Hunterdon County Board of Taxation, which affirmed the assessor's action. Plaintiff has filed this action seeking to have this court vacate the new assessments for 1976 and 1977.
It is evident that an assessment should have been placed upon the subject property to reflect the improvements made in 1973 and 1974. This was not done as of those years and therefore the owners of the property at that time paid less in property tax than they should have paid. Such a circumstance is not uncommon. The general problem was discussed by our Supreme Court in Appeal of New York State Realty & Terminal Co., 21 N.J. 90, 121 A.2d 21 (1956). To ameliorate this situation, the Legislature enacted the added assessment statute, N.J.S.A. 54:4-63.1 et seq., and two omitted assessment statutes, N.J.S.A. 54:4-63.12 et seq. and N.J.S.A. 54:4-63.31 et seq. These statutes have been characterized by the Supreme Court in the following language:
The theory of the Added Assessments Law and the Omitted Assessments Law is to provide means whereby new construction and property omitted from the tax rolls through design or inadvertence can be added and included and taxed from the appropriate date when added to the land or for the appropriate year in which it was omitted from the tax rolls. The effect of these acts is to aid in accomplishing a proper and equitable distribution of the tax burden. [Appeal of New York State Realty & Terminal Co., supra, at 97, 121 A.2d 21].
The Supreme Court distinguished added and omitted assessments in a manner which makes clear that the 1976 "omitted" assessment and the 1977 "added" assessment in the present case both should have been termed omitted assessments. Id. at 98-99, 121 A.2d 21. The challenged assessments were both imposed to incorporate into the ratable base certain property that had been omitted in prior years "through design or inadvertence." Id. at 97, 121 A.2d 21. See Snyder v. South Plainfield Borough, 1 N.J. Tax 3, 8 (1980). Added assessments relate to improvements made after the assessing date or during the tax year. N.J.S.A. 54:4-63.2 and 4-63.3.
*108 Omitted assessments may be imposed not only for the year in which the County Board of Taxation or the assessor takes action to correct the omission, but also for the preceding year. N.J.S.A. 54:4-63.12 and N.J.S.A. 54:4-63.31. Thus, the Legislature has limited the remedy of the taxing district to two years. Defendant could not have gone all the way back to 1973 and 1974, the actual years of the improvements in this case, to attempt to collect its taxes, nor did it attempt to do so. At best it may collect taxes based upon the added value of these buildings as of 1976 and 1977.
Annual property taxes for many years have been deemed by the Legislature to be a lien as of the first day of the tax year, even though neither the amount of the assessment nor the tax rate is known at that time. N.J.S.A. 54:4-63.20; N.J.S.A. 54:5-6. Prior to a statutory amendment in 1944, property taxes did not become a lien until December 1 of the tax year. L. 1918, c. 237, § 6. According to the sponsor's statement to the bill which became L. 1944, c. 247, the effective date of the lien was advanced to prevent a loss of local tax revenues, the change being prompted by court decisions holding that when the Federal Government condemned land it had to pay only those taxes which had already become due or which were then a lien upon the property. The sponsor stated that the result of this had been that "many municipalities have lost tax revenues on which their current budget was dependent," and that after adoption of the amendment, annual taxes "would have to be paid in full in case of a Federal taking." Statement, Assembly Bill 234 (1944).
It is settled that "municipal liens, and the rights arising therefrom, are solely statutory in origin and are fixed and determined by the statute." Brewer v. Porch, 53 N.J. 167, 173, 249 A.2d 388 (1969). The statutory provision establishing the effective date on which property taxes become a lien is unequivocal. It was made the first day of the tax year in order to benefit municipalities. It is therefore clear that the omitted assessments imposed by defendant in this matter were liens on property purchased by plaintiff as of January 1, 1976 and *109 January 1, 1977. Cf. East Orange v. Palmer, 47 N.J. 307, 318, 220 A.2d 679 (1966).
Plaintiff contends that since the omitted assessments were not shown on the official tax search she obtained prior to acquiring title, defendant is precluded from collecting taxes on the omitted assessments or from otherwise enforcing its lien. Plaintiff relies upon N.J.S.A. 54:5-17, which provides in part as follows:
A bona fide purchaser, lessee or mortgagee who shall acquire for a valuable consideration an interest in lands covered by an official tax search and in reliance on said search shall hold such interest free from any municipal lien ... not shown on that search, ....
The township contends that plaintiff is obligated to pay the additional taxes assessed for 1976 and 1977, even though it does not dispute that plaintiff purchased her property in reliance on the tax search. The township's position, apparently, is that omitted and added assessments cannot be reflected on a tax search until October when the county board of taxation certifies that the assessments are correct. See N.J.S.A. 54:4-63.5; N.J.S.A. 54:4-63.17; N.J.S.A. 54:4-63.32. The township argues also that if the court vacates the omitted assessments "it would be putting the purchaser of this property in a better position than the actual owner," who, it is clear, would have been obligated to pay taxes based upon the omitted assessments if the property had not been sold. The township suggests that plaintiff's remedy, if any, is to sue the persons from whom she bought the property, based upon their representation that they were selling the property to her free and clear of all liens.
The responsibility of an official municipal tax search officer is set forth in N.J.S.A. 54:5-12, as follows:
Upon receipt of the fees hereinafter provided, and of a written application from any person containing a diagram or description showing the location and dimensions of the tract of land to be covered by the certificate, and the name of the owner of the tract, such official shall make an examination of the records of the municipality, and within 15 days after receipt of the application, issue a certificate certifying the taxes, assessments or other municipal liens or charges, levied or assessed against the property described in the application, which are liens thereon at the date of the certificate. He shall include therein all unpaid installments of assessments theretofore levied and in force, whether due or not and whether the land is or may be subject to roll-back taxes under the Farmland Assessment Act of 1964, P.L. 1964, chapter 48 (C. 54:4-23.1 et seq.). [Emphasis supplied].
*110 This section is part of the tax sale law, N.J.S.A. 54:5-1 et seq., which the Legislature has stated "shall be deemed to be a remedial statute ... and be liberally construed to effectuate the remedial objects thereof." N.J.S.A. 54:5-3.
As discussed above, the taxes payable upon the omitted assessments at issue in this case were liens on the subject property as of the date of the official tax search certificate issued to plaintiff on August 17, 1977. Defendant's contention that the actual assessments were not in fact known and could not have been certified in a tax search until October 1977 is not persuasive. No property tax assessment is complete or certified until on or about January 10 of the tax year when the assessor files his assessment list with the county board of taxation. N.J.S.A. 54:4-35. Assessments may be changed administratively by the county board of taxation prior to May 13 of the tax year when the county board certifies the assessments to the municipal tax collectors. N.J.S.A. 54:4-55. The dollar amount of property tax levied upon any property is not known until the county board has completed its review of the tax list and struck the tax rates. N.J.S.A. 54:4-48.
Surely defendant would not advance the proposition that it could not advise a prospective purchaser of a property's tax liability for the current year until May. In fact, the official tax search issued to plaintiff contained the following language:
This property is subject to current year's taxes levied or to be levied, and not yet certified to by the County Board of Taxation in accordance with Chapter 397, Laws of 1941. R.S. 54:4-63.1.
This admonition is sufficiently clear to have alerted plaintiff to the liability of the property for a regular tax assessment, which in fact was set forth in its precise amount for the current year. In addition, the reference to "Chapter 397, Laws of 1941, R.S. 54:4-63.1" advised plaintiff of the existence of the added assessment statute, which permits a municipality to impose an additional assessment for new construction undertaken subsequent to October 1 of the preceding year, the most recent assessing date. Cf. Kuvin v. Newark, 129 N.J.L. 115, 28 A.2d 271 (Sup.Ct. 1942). However, although the omitted assessment was in part *111 for 1977 and the official tax search referred to the "current year's taxes," the language in the search officer's certification cannot reasonably be said to have put plaintiff on notice that the municipality might seek to impose another assessment on the subject property in 1977 because of construction undertaken in 1973 and 1974. Plaintiff testified credibly that in her inspections of the property prior to closing title she had not observed any construction at or improvement to the premises and was surprised to receive notice of an omitted assessment after closing title.
The omitted assessment liens relating back to January 1, 1976 and January 1, 1977 with regard to the subject property should have been disclosed on the official tax search issued to plaintiff. A prospective purchaser should not be required to attempt to uncover potential omitted assessments. The purpose of N.J.S.A. 54:5-12 and N.J.S.A. 54:5-17 is to advise a bona fide purchaser of any municipal liens or charges associated with the property to be acquired. In enacting these provisions the Legislature imposed an obligation on municipalities for the protection of purchasers. The first specific obligation is to "make an examination of the records of the municipality" prior to issuance of the official tax search certificate. In the present case "the records of the municipality" as of the date of the tax search certificate included building permits and certificates of occupancy or completion for the subject property issued in 1973 and 1974. Furthermore, "the records of the municipality" included a property record card and a tax assessment on the subject property which had both been made as a result of a 1971 revaluation and which had not been updated since the issuance of the building permits and certificates of occupancy or completion. Obviously, defendant's records demonstrated the potential for an omitted assessment on the subject property.
The problem seems to have been in part that there was no adequate "examination of the records of the municipality" prior to issuance of the tax search certificate. The assessor admitted he had not obtained the building permits and certificates *112 of occupancy or completion from the building inspector in a timely fashion. The other problem with defendant's action in this case was that, in what she must have thought was a close question, the official tax search officer chose to err on the side of not disclosing rather than fully disclosing information in the municipality's records. The tax search officer stated in her letter of October 5, 1977 that even after she had obtained change orders from the assessor, which was after issuance of the tax search, she had no obligation to disclose them "because they are not yet approved by the County Board of Taxation." However, the liens had retroactive effect to January 1, 1976 and January 1, 1977 as a matter of law, and the position taken by the tax search officer was therefore incorrect.
When the Legislature advanced the date upon which annual taxes become liens it did so to benefit municipalities; it could not have intended at the same time that municipalities should avoid disclosure of such liens in the context of a remedial statute intended to benefit purchasers of property. Defendant's contention that purchasers of property should be treated the same as sellers with respect to the enforceability of omitted assessments is contrary to the very purpose of N.J.S.A. 54:5-12 and N.J.S.A. 54:5-17. In the absence of a property transfer, a municipality may perhaps tolerate some untidiness in its record keeping. If for whatever reason an assessor belatedly catches up with improvements made to a property, the owner normally will be prepared for an increased assessment because he caused the improvements to be made, but the standard is different when a property has been sold. When a proper request for a search for municipal liens has been made, a taxing district must conduct an active examination of its own records for information which could result in or has resulted in a municipal lien on the property as of the date the tax search issues. Tax search officers should be as explicit with respect to possible omitted assessments as they are with respect to possible rollback taxes assessed pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. If any such municipal lien is not disclosed on the tax search certificate, the municipality waives *113 the right to enforce it against the purchaser of the property. This is a straightforward system with an effective sanction. The municipality with efficient record keeping and a practice of disclosure of potential liens will comply with the purpose of N.J.S.A. 54:5-12 and will avoid the effect of N.J.S.A. 54:5-17.
The only case that appears to discuss an issue closely analogous to the issue involved in this proceeding is Go-Lit Realty Co. v. Jersey City, 120 N.J.L. 592, 1 A.2d 262 (Sup.Ct. 1938). In that case an official tax search issued in 1937 had not disclosed to a prospective purchaser that the city had taken appeals from county tax board reductions of the assessment on the subject property for 1935 and 1936. In the tax appeals, which were pending when the tax search was issued, the city sought to have its original assessments reinstated. In defense of its tax search that did not disclose the appeals, the city contended that the official tax assessment as of the date of the search was the assessment as it had been reduced by the county board of taxation, and that therefore no potential assessment increased need be shown. The court rejected the city's position, stating:
We think the position taken by the [city] is too narrow and that the [plaintiff] was entitled to be apprised, in the search which was returned by the taxing authority, of the fact that the assessment, as reduced by the county board, was challenged by the taxing authority and that an appeal had been or was about to be taken.
The legislative intent in passing the statute mentioned above [N.J.S.A. 54:5-17] certainly was to provide that the certification as to outstanding liens was one on which the intending purchaser might act with safety. It was the duty of the respondents to state the situation on the search and that the judgment reducing the assessment was under appeal or was shortly to be taken up on appeal. [120 N.J.L. at 594, 1 A.2d 262].
Similarly, in the present case, the position of the township is too narrow. It did not properly meet its burden of searching its records and alerting plaintiff to the possibility, indeed the virtual certainty, of an omitted assessment. Accordingly, plaintiff, who relied upon the completeness of the official tax search, is entitled to the protection afforded by N.J.S.A. 54:5-17. Judgment will be entered vacating the omitted assessments on the subject property for 1976 and 1977.