EDWARD WILSON ET AL., PROSECUTORS, v. CITY OF
OCEAN CITY ET AL., RESPONDENTS.

Submitted October term, 1932—Decided April 21, 1933.

Before Justices PARKER, LLOYD and HEHER.

For the prosecutors, *William Elmer Brown, Jr.*, and *Bourgeois & Coulomb*.

For the defendants, *Robert K. Bell, Furman A. DeMaris, Jr.*, and *Kenneth J. Dawes*.

PER CURIAM.

This is an attack upon an assessment made in the year 1931 for the construction of additional sewer facilities in Ocean City. The sewerage system is not planned to accommodate surface water, but only house drainage and kindred matter.

It is stipulated that all the parties concerned had appealed to the Circuit Court of the county, pursuant to the statute, on

the ground that the assessment is unfair and unjust. Of this, more hereafter.

The preliminary steps by way of ordinance, contract, &c., are not drawn in question. It is urged that the commissioners of assessment acted illegally with regard to their public hearing concerning the assessment; and this point will also be taken up in its proper order.

The first point made covering reasons 1 and 2 is, that the assessments were made entirely on a frontage basis and are therefore illegal. This, however, does not follow. The law is settled that an assessment on a frontage basis will not be set aside if that basis appears to be a fair test for the estimation of benefits. This is conspicuously the case here, where the question is that of affording drainage facilities to abutting lands. The sewer pipes run through various streets and lots abutting on those streets. Those lots obtain privilege of drainage and are very properly regarded as benefited to the extent of their frontage thereon. It is urged that these frontage assessments are without reference to the depth or shape of the lots. Our examination of the map seems to indicate that all the lots are rectangular and of substantially uniform depth, but not of entirely uniform frontage. It seems eminently proper that they should be assessed proportionately to that frontage. It is further argued that a number of lots had buildings upon them and that others did not; but that the commissioners made their assessments irrespective of the fact whether any given lot had or had not a building thereon. We are unable to see that the presence or absence of a building makes any difference in the estimation of the assessment. The fundamental rule is to regulate the assessment in accordance with any use to which the property can legitimately be put; and there is nothing here to show that any one lot can be used for substantially a different purpose than any other lot.

Point 2 covering reasons 3 and 4 is that the assessments are in excess of the actual benefits conferred, and that all of the properties benefited by the improvement were not assessed. The answer to the first part of this proposition is that the fairness and justness of the assessment is before the Circuit

Court on appeal and is therefore not for our consideration. The answer to the second is that, as we understand the rule, the question is whether any individual lot is assessed in excess of the benefits conferred, and not whether some other lot is assessed at a lower rate or not at all. With regard to the argument that certain lots not abutting upon the sewer but being connected later on, are not assessed, we deem the answer to be that they are not assessable until the facilities for such connection are afforded them.

The third main point is that the assessments deprive the prosecutors of their property without due process of law and deny them the equal protection of the laws. This is merely a repetition in another form of the assertion that the assessments were unfair and unjust and likewise answered by saying that that question is already submitted to another tribunal for decision.

The fourth point is that the prosecutors were not given proper notice nor afforded a lawful hearing. This included the sixth, seventh, eighth and ninth reasons. The seventh in particular charges that the commissioners of assessment refused and declined to inform property·owners attending the hearings of November 23d and November 30th of the probable cost to them of the improvement, the area of the property to be assessed therefor, and the method of ascertaining the amount of said assessment. The eighth is that the commissioners failed to give proper and legal notice of an adjourned meeting to be held on November 30th. This may as well be disposed of now by saying that when the meeting of November 23d closed, announcement was made at that time of the adjournment until the 30th, and that that is sufficient. Reason 9 is that the notice of the meeting to be held November 23d, 1931, incorrectly described the area affected and benefited by the improvement. The substance of this last reason is that the notice spoke of Thirty-fourth street as a limit of the improvement, whereas the improvement actually runs as far as Thirty-sixth street. There is nothing in the brief pointing out that any of the prosecutors own property within the area that was not included in the notice; and if they did

own such property, they could readily ascertain the exact area of the improvement by examining the papers at the city hall. As a matter of fact, most, if not all, of them were represented, both at the meetings of the commissioners and later at the meeting of the council, by diligent and capable counsel, and it seems inconceivable that any one could have been misled by the inaccuracy of this description, particularly as the notice contains a clause "any lands adjacent thereto where said sewer system may be constructed."

The really troublesome point is raised by reason 7 which alleges that the commissioners refused and declined to inform the property owners regarding the assessments that they were to expect. They were informed at the meeting of November 23d, that the assessment would probably be upon a frontage foot basis; but at that meeting it would seem that the commissioners were not themselves aware of the precise area to be assessed or the amount of lineal frontage. The meeting was a somewhat turbulent one and it may well be that property owners were not treated any too politely by the commissioners. However, the law itself does not seem to require that at the meeting of the commissioners there shall be even a definite preliminary scheme, not to mention a final one. In some of the former statutes there has been a requirement that the commissioners shall have a preliminary assessment, as in *Humphreys* v. *Bayonne,* 60 *N. J. L.* (at *p.* 409); 38 *Atl. Rep.* 761; but the Home Rule act (*Pamph. L.* 1917, *pp.* 377, 378) contains no such requirement. It provides that the officer or board shall view the lands in the vicinity of the improvement benefited by such improvement and thereby fix a time and place for the hearing of all persons interested; of which notice shall be given. This notice was given and the parties interested appeared pursuant thereto. Section 21 of article 20 then provides that the board shall attend and shall "give all parties interested or affected by the improvement ample opportunity to be heard upon the subject of the assessment; the * * * board shall have power to examine witnesses * * *, shall thereupon make a just and equitable assessment of the benefits conferred," &c. In other words, the

assessment is not made either in a preliminary or final way until after the board has held its public meeting and heard all parties. The commissioners might well have stated to the inquiring parties at that meeting that they expected to consider such and such data with regard to the making of the assessment, but apparently they were not obliged by law to do so. The scheme of the statute seems to be that they are to make up their assessment after the meeting, then it goes before the municipal body and the latter holds a hearing thereon. This hearing was held and these parties were all heard at a time when they were fully advised with regard to the various facts in the case.

Some criticism is made of the fact that the commissioners adopted their assessment after the meeting of November 30th had adjourned; and not publicly. They were not required to adopt it in public and we see nothing irregular about such action.

The fifth point is that the commissioners did not examine the work and view the lands. The case seems to show that they did.

The sixth point is based on reason No. 11 which reads as follows: "That the cost of said improvement as assessed * * * is in excess of special benefits, and as to such excess the cost should have been met by general taxation." Of course, this is correct if the cost assessed is in excess of special benefits, but that is the precise point for consideration by the Circuit Court.

The seventh point seems to be that inasmuch as the city deducted a penalty of $12,000 from the contract price, that the assessment should be set aside. We disregard the item of $100 for postage as too trivial for consideration. It does not appear that the city has collected the $12,000 or will not be ultimately liable for the same. In any event, this should not invalidate an assessment of some $200,000 made on the basis of the contract price. See *Kohler* v. *Guttenberg*, 38 *N. J. L.* (at *p.* 419).

Lastly, that the report was revised and corrected by a committee of the commissioners instead of by the board itself.

This seems to be authorized by statute. *Pamph. L.* 1925, *pp.* 235, 236, amendment of section 27 of article 20.

We find no valid reason for setting aside these assessments and the writ will therefore be dismissed as to all the parties.