731 A.2d 1

2ND ROC–JERSEY ASSOCIATES, 3RD ROC–JERSEY ASSOCIATES, 4TH ROC–JERSEY ASSOCIATES AND 5TH ROC–JERSEY AS- SOCIATES, PLAINTIFFS–APPELLANTS, AND SHAV ASSOCI- ATES, PLAINTIFF–INTERVENOR–APPELLANT, v. TOWN OF MORRISTOWN, A MUNICIPAL CORPORATION, AND MORRIS- TOWN PARTNERS, INC., DEFENDANTS–RESPONDENTS, AND DIRECTOR, DIVISION OF LOCAL GOVERNMENT SER- VICES, INTERVENOR–RESPONDENT.

Argued September 28, 1998—Decided May 13, 1999.

584

*William J. Sitar,* argued the cause for intervenor-appellant Shav Associates (*Mandelbaum & Mandelbaum,* attorneys; *Mr. Sitar, Steven R. Irwin* and *Peter L. Davidson,* on the briefs).

*James J. Shrager,* argued the cause for appellants 2nd Roc–Jersey Associates, 3rd Roc–Jersey Associates, 4th Roc–Jersey Associates and 5th Roc–Jersey Associates (*Hannoch Weisman,* attorneys).

*Herbert A. Vogel,* argued the cause for respondent Town of Morristown (*Vogel, Chait, Schwartz & Collins,* attorneys; *Laura J. Lande,* on the brief).

*Robert S. Goldsmith,* argued the cause for respondent Morristown Partners, Inc. (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel,* attorneys; *Mr. Goldsmith* and *Gary K. Wolinetz,* on the brief).

*Gail L. Menyuk,* Deputy Attorney General, argued the cause for intervenor-respondent Director, Division of Local Government Services (*Peter Verniero,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Paul I. Tannenbaum,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

The principal issue raised in this appeal is whether assessments imposed on real property in a municipal Special Improvement District are unconstitutional because residential properties are excluded from the assessments. The issue arises because the assessments imposed on properties in the Special Improvement District may, in their application, constitute real property taxes. Whether the special assessments should be deemed real property taxes depends in large part on the nature of the benefits received by the properties within the Special Improvement District and on the method of determining the amount to be assessed. If the assessments are deemed taxes, the uniformity and exemption standards governing the taxation of real property under the New Jersey Constitution would determine the validity of the exclusion of residential properties.

I

In 1993, the Town of Morristown enacted Ordinance 0–42–93, entitled "An Ordinance Creating A Special Improvement District Within The Town Of Morristown And Designating A District Management Corporation." The ordinance was passed pursuant to *N.J.S.A.* 40:56–65 to –89, which authorized municipalities to establish Special Improvement Districts (SIDs).

The statute provided for the creation of a District Management Corporation empowered to fund, manage, acquire, and oversee the rehabilitation of properties in SID districts, and to attract new businesses. *N.J.S.A.* 40:56–83(b). The SID was created due to

declining economic conditions in Morristown. The stated purposes of the ordinance were to:

(a) promote economic growth and employment within the Business District;

(b) foster and encourage self-help programs to enhance the local business climate;

(c) create a self-financing Special Improvement District to assist in meeting community needs, goals and objectives;

(d) designate a District Management Corporation to assist in managing self-help programs and in carrying out local needs, goals and objectives.

Many New Jersey municipalities have created SIDs pursuant to the enabling statute. The overwhelming majority of these SIDs, like the Morristown SID, use real property value as the basis for determining SID special assessments. The Morristown ordinance specifically. exempted residential property from the SID special assessment, *viz:*

(c) All properties within the [SID] that are used for residential purposes, and those portions of mixed use properties that are residential are deemed excluded from the assessing or taxing provisions of this ordinance and are expressly exempt from any tax or assessment made for Special Improvement District purposes.

In 1994, the Appellate Division, in an unreported decision, *Gonzalez v. Borough of Freehold,* No. A–3476–92T2 (App. Div. June 30, 1994), upheld the constitutionality of the statute authorizing the establishment of SIDs. Nevertheless, it invalidated the provision of a municipal SID ordinance that exempted residential properties because the provision violated the statutory definition of a SID, namely, "an area within a municipality designated by municipal ordinance as an area in which a special assessment on *all* property within the district shall be imposed." *N.J.S.A.* 4:56–66(b) (emphasis added). In response to that decision, Morristown amended its SID ordinance by removing residential properties from the boundaries of the SID.

The annual budget for the SID in 1994 was $500,000. A special assessment was made on all subject property within the SID on the basis of .105% of the property's assessed value for local real property tax purposes. Plaintiffs, 2nd Roc–Jersey Associates, 3rd Roc–Jersey Associates, 4th Roc–Jersey Associates and 5th Roc–Jersey Associates (collectively Roc–Jersey), the owners of Head-

quarters Plaza, a commercial office complex, were assessed $64,317.75. Plaintiff Shav Associates, the owner of a four-story office building, was assessed $11,061.75 (later reduced to $9,443.18).

On December 12, 1994, plaintiffs filed a verified complaint against defendants Town of Morristown and the District Management Corporation, Morristown Partnership, Inc. (MPI), challenging the assessments. The trial court ruled that both ordinances were valid and that residential properties located within the geographic boundaries of the district were permissibly excluded from contributing to the costs of the SID. The court further directed Morristown to prepare:

a report consciously articulating its position concerning (A) the extent to which different categories of properties within the [SID] benefit by the activities undertaken by [MPI] and whether and to what extent the different categories of properties should receive differentiated assessments and (B) whether the nonresidential portion of mixed use properties should be included for assessment within the [SID].

Thereafter, plaintiffs filed separate notices of appeal contesting the court's ruling upholding the exclusion of residential properties.

Pursuant to the trial court's order, the parties submitted detailed reports. In April 1995, after reviewing those reports, the trial court entered an order ruling that the special assessment formula adopted by Morristown was both reasonable and legal. Roc–Jersey amended its notice of appeal to include the April order.

Thereafter, the Legislature enacted a statute, *L.* 1995, *c.* 170, amending *N.J.S.A.* 40:56–66(b). The amendment expressly permitted municipalities to exempt residential properties, residential portions of mixed-use properties, and parcels with any number of residential units or vacant properties within a SID from the special assessment. The law became effective immediately on July 5, 1995.

The appeals of Roc–Jersey and Shav Associates were subsequently consolidated. The Director of the Division of Local Government Services intervened to respond to the constitutional issues raised in the appeals. The Appellate Division, in an unpublished *per curiam* opinion, affirmed the trial court's dismissal of

plaintiffs' complaints. This Court granted plaintiffs' petitions for certification. 152 *N.J.* 12, 702 *A.*2d 351 (1997).

## II

Plaintiffs focus their constitutional challenge on the 1995 amendment to *N.J.S.A.* 40:56–66(b), which allows municipalities to exclude residential properties from the SID assessment. That exclusion, according to plaintiffs, violates several constitutional principles. They contend foremost that the exclusion of residential property is unconstitutional because the SID special assessment is a tax, rather than a special assessment, and therefore violates the Uniformity Clause of the New Jersey Constitution, which requires real property taxes to be applied uniformly to all classes of real property. *N.J. Const.* art. VIII, § 1, ¶ 1(a). Plaintiffs also contend that the exclusion of residential property from such a tax violates the constitutional provision that authorizes only general or special purpose exemptions from taxation. *N.J. Const.* art. VIII, § 1, ¶ 2. Plaintiffs present the related claim that the factors that serve to invalidate the special assessments under the Uniformity Clause also invalidate the assessments as an unconstitutional taking without just compensation. *N.J. Const.* art. I, ¶ 20; *U.S. Const.* amend. v.

### A.

The Uniformity Clause of the New Jersey Constitution applies to the taxation of real property. It requires that all property be assessed for taxation "under general laws and by uniform rules" and according to the "same standard of value." *N.J. Const.* art. VIII, § 1, ¶ 1(a), *viz:*

> Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
>
> [*Ibid.*]

.The Legislature may exempt certain property from the Uniformity Clause either by general laws or for the specified purposes enumerated in the exemption clause. *N.J. Const.* art. VIII, § 1, ¶ 2, *viz:*

> Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit.
>
> [<em>Ibid.</em>]

The history of the Constitution's tax clauses underscores New Jersey's strong and firm policy that strictly mandates uniformity in the imposition of real property taxes.

· During the first hundred years of the post-revolutionary period, from 1776 to 1875, the New Jersey Constitution contained no clause relating to taxation. 2 *Proceedings of the State of New Jersey Constitutional Convention of 1947* 542 (S. Goldmann & H. Crystal, ed. 1951) (hereinafter referred to as *Proceedings*). In 1875, the New Jersey Constitution of 1844 was amended to include a tax provision.

> Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value.
>
> [<em>1844 New Jersey Constitution,</em> art. IV, sec. 7, para. 12.]

That clause was interpreted to empower the Legislature to tax classes of property differently. As a result, real property taxation abuses occurred under the 1875 tax clause. Particularly, railroads were continuously granted preferential treatment. *See* Wheaton J. Lane, *From Indian Trail to Iron Horse* (1939); 5 *Proceedings* at 565 (testimony of Milton B. Conford to the Committee on Tax and Finance); 1 W. Sackett, *Modern Battles of Trenton* 19–23 (1895). The inequalities of real property taxation increased with the passing of the Railroad Tax Law of 1941, which fixed a tax rate for railroad property that was well below the average rate of taxation for real property. 5 *Proceedings* at 565. In *Jersey City v. Kelly,* 134 *N.J.L.* 239, 47 *A.*2d 354 (1946), the Court of Errors

and Appeals upheld that statute. Nevertheless, it pointedly quoted from *Jersey City v. State Bd. of Tax Appeals*, 133 *N.J.L.* 202, 43 *A.*2d 799 (Sup.Ct.1945), *viz:*

Equality of the burden upon all taxable property can only be attained if and when there shall be but one general law applicable alike to all taxable property, irrespective of its particular use. That, however, continues to be the 'dream unrealized.'

[*Id.* at 205, 43 *A.*2d 799 (citation omitted).]

The *Kelly* case, and the underlying railroad legislation, was a catalyst that precipitated the reworking of the constitutional tax clause. *New Jersey State League of Municipalities v. Kimmelman*, 105 *N.J.* 422, 431, 522 *A.*2d 430 (1987). The proposed tax clause was passed in its current form, raising a constitutional bar against the preferential treatment of one industry or class of property. That constitutional prohibition against preferential tax treatment of any type or class of real property has been expressly acknowledged, fully recognized, and consistently followed by the courts. *E.g. Switz v. Kingsley*, 37 *N.J.* 566, 182 *A.*2d 841 (1962) (invalidating act granting preferential treatment to farmlands by assessing farmland at agricultural rather than market value); *Kimmelman, supra*, 105 *N.J.* at 438–39, 522 *A.*2d 430 (invalidating statute that delayed taxation on unoccupied, newly-constructed single family dwellings).

Both constitutional history and judicial precedent adjure a strict application of the tax clauses to real property. If the assessments authorized by the SID statute and imposed by the implementing ordinance are deemed to be real property taxes, then the exclusion of residential properties could constitute preferential tax treatment in violation of the uniformity and exemption clauses of the Constitution. Therefore, the important issue is whether, as a matter of constitutional interpretation, the SID impositions constitute real property taxes or special assessments.

B.

1.

It is well recognized that the Uniformity Clause of the Constitution is inapplicable to special assessments. *McNally v.*

*Township of Teaneck*, 75 *N.J.* 33, 379 *A.*2d 446 (1977). Assessments "are not such taxes as are referred to in the various clauses of the constitution and they are neither embraced, nor intended to be embraced in them." 14 McQuillin, *Municipal Corporations* § 38.05 at 44 (3d ed.1987).

Our courts have long recognized that the cost of an improvement may be imposed as a special assessment on a property particularly benefited by that improvement to the extent of that benefit. *E.g. State v. Mayor of Newark*, 37 *N.J.L.* 415, 422 (Sup.Ct.1874) (defining special assessment for installment of sidewalks as type of tax that is the result of individualized, rather than public, obligation and requires proportionality of benefit); *In Re Report of Commr's of Elizabeth*, 49 *N.J.L.* 488, 504, 10 *A.* 363 (Sup.Ct.1887) (observing that difference between special assessment and tax is source of the obligation, which "springs from the construction of an authorized public work, which confers a material special benefit upon lands . . . .") (quoting *Cross v. Hayes*, 45 *N.J.L.* 12, 17 (Sup.Ct.1883)); *Kuvin v. City of Newark*, 129 *N.J.L.* 115, 119, 28 *A.*2d 271 (Sup.Ct.1942) ("[W]hen a municipality undertakes a local improvement conferring benefits specially upon certain properties the resulting charge specially laid against the property so benefited, to be applied toward the cost of the improvement, is called an assessment. . . ."); *McNally, supra*, 75 *N.J.* at 46, 379 *A.*2d 446 ("The special assessment is a means of reimbursing a municipality for a capital expenditure which was specially advantageous to certain properties.").

■ Traditionally, the differences between an assessment and a tax include: an assessment supports local improvements, while a tax finances general operations; an assessment is a one-time charge, while a tax is annual; and an assessment requires that the benefit be direct, while a tax requires no such direct benefit. 5 Richard R. Powell, *Powell on Real Property*, § 39.03[1] (1998). The improvement must benefit the assessed property, and that benefit must be special and local, that is, the benefit to the specific property must be substantially greater than to the public in

general. *Id.* at § 39.03[2]. The benefit can be measured by increased market value or by the overall economic effect of the improvement. *Ibid.* Lastly, the benefit must be certain rather than speculative, although it may arise in the future. *Ibid.* These salient features of the special assessment are codified by statute. *N.J.S.A.* 40:56–1 authorizes municipalities to impose special assessments for local improvements such as sewage, paving, and water. *See, e.g. Meglino v. Township Comm. of Eagleswood,* 103 *N.J.* 144, 510 *A.*2d 1134 (1986) (addressing special assessment for construction of water and sewer lines); *Ridgewood Country Club v. Borough of Paramus,* 55 *N.J.* 62, 259 *A.*2d 218 (1969) (addressing special assessment for sewer); *City of Paterson v. Fargo Realty, Inc.,* 174 *N.J.Super.* 178, 415 *A.*2d 1210 (App.Div.1980) (involving demolition of nuisance).

The traditional definition of special assessments was predicated on a physical improvement or "public work," such as the installation of sidewalks, paving, or water and sewage systems, that produced a tangible benefit for the property subject to the assessment. *See N.J.S.A.* 40:56–1. The definition of special assessments, however, has not been rigidly interpreted. It has been generally recognized that "[t]he construction of a public improvement is not a necessary requisite for the levy of a special assessment since an 'improvement' may simply be the furnishing of or making available a vital service, such as fire protection or garbage disposal." *Charlotte County v. Fiske,* 350 *So.*2d 578, 580 (Fla. App.2d 1977); *see South Trail Fire Control District v. Town Hall,* 273 *So.*2d 380 (Fla.1973) (upholding special assessment levied solely on commercial properties to support fire protection service); McQuillin, *supra,* § 38.01 at 13. Further, the improvement need not be "local" in the sense of being specifically affixed or adherent to the assessed property. For example, the creation of parking lots and parking spaces has been upheld in several states as a proper object for special assessments. *E.g. Trivalent Realty Co. v. Town of Westport,* 2 *Conn.App.* 213, 477 *A.*2d 140 (1984) (upholding assessment for off-street parking lot as a qualified "municipal improvement"); *City of Whittier v. Dixon,* 24 *Cal.*2d

664, 151 *P.*2d 5 (1944) (upholding special assessment for creation of public parking spaces).

■ This Court has similarly upheld assessments for improvements that result only in a general or indirect benefit and enhanced economic effect on property. *E.g. Ridgewood, supra,* 55 *N.J.* 62, 259 *A.*2d 218 (noting that golf course may not see rise in value from sewage system but nevertheless must pay for special improvement). A property owner may benefit from an improvement even though the benefit is not presently apparent. "The fact that a landowner has no present, immediate use for the improvement is [ ] immaterial, so long as the use of the improvement is accessible and available to the land sought to be assessed for any use to which the property may legitimately be put." *Id.* at 68–69, 259 *A.*2d 218.

The SID special assessment does not conform to the prototypical special assessment. Unlike *N.J.S.A.* 40:56–21, which authorizes special assessments for local improvements that are essentially identified with specific properties, the SID statute, *N.J.S.A.* 40:56–73, permits special assessments that bestow general benefits consisting of services and improvements on a class of properties within the SID. The underlying improvements that are funded by the SID assessments are not necessarily physical, concrete, or permanent, nor are they directly adherent to the specific commercial properties that are assessed. Further, the benefits to the commercial properties are derived from improvements 'that are generalized and relatively intangible; the benefits consist of the results of the provision of ongoing public activities and services, such as advertising campaigns, meter bagging, street sweeping, the encouragement of tourism, hospitality guides, and business recruitment, as well as physical improvements, such as streetscape enhancement, supplemental lighting, and other aesthetic measures. *N.J.S.A.* 40:56–83(b). These kinds of services supplement traditional municipal services, but they are specifically intended and designed to better commercial properties and promote economic growth in the business community. *See Fanelli v. City of*

*Trenton,* 135 *N.J.* 582, 590, 641 *A.*2d 541 (1994). Further, while traditional special assessments are one-time payments for a specific improvement, the SID assessments are levied annually for continuing services and recurrent improvements and are collected to finance the SID's ongoing operations.

Governmental services in conjunction with physical improvements that are designed to enhance property use, function and value have been upheld as a benefit to specific property sufficient to support the imposition of a special assessment. In *City of Seattle v. Rogers Clothing for Men,* 114 *Wash.*2d 213, 787 *P.*2d 39 (1990), the Supreme Court of Washington upheld SID special assessments used to support advertising, maintenance, flower planting, sidewalk cleaning, information and direction signs, and other services provided to businesses, because these constituted special benefits to commercial properties. *See also City of Whittier, supra,* 151 *P.*2d at 7 ("Parking spaces that tend to stabilize a business section, by making it readily accessible to trade, benefit the property in the vicinity."). We are persuaded by the holding of *City of Seattle* that special assessments in a SID will not be deemed taxes for the purposes of the Uniformity Clause of the Washington Constitution and that such special assessments could be limited to commercial properties. That court determined that any spillover of benefits to the general public that might accrue from the services provided by the SID were insufficient to alter the calculus, nor did such spillover alter the essential purpose and effect of the SID to benefit primarily the commercial properties.

■ We conclude that the core of the definition of a special assessment that makes the imposition a special assessment rather than a general tax is not that the benefit necessarily or primarily consists of physical improvements that are permanent in nature and are local in that they are adherent to or identified with specific individual properties that are directly and tangibly benefitted thereby. Rather, the special assessment is used to provide a combination of services and improvements that are intended and designed to benefit particular properties and demonstrably en-

hance the value and/or the use or function of the properties that are subject to the special assessment.

## 2.

■ Plaintiffs argue that even if the assessments are upheld as special assessments that confer benefits to the commercial properties, the method of assessment was overly broad and not sufficiently tailored to the benefit received by individual properties. For that reason, plaintiffs contend, the assessments are invalid.

■ A valid special assessment must be "as nearly as may be in proportion" to the benefit received. *McNally, supra,* 75 *N.J.* at 33, 379 *A.*2d 446. It must not be in "substantial excess" of the special benefits to the land. *See Village of Norwood v. Baker,* 172 *U.S.* 269, 279, 19 *S.Ct.* 187, 191, 43 *L.Ed.* 443, 447 (1898). Special assessments, however, need not be measured with mathematical precision.

Plaintiffs concede that the benefit produced by the SIDs is greater for the commercial properties in Morristown. According to plaintiffs, however, not all commercial properties benefit equally from the activities of the SID. Plaintiffs further contend that the SID provides benefits to the Town as a whole, and that all properties, residential, mixed use, and commercial, ought to be similarly assessed for its funding. Therefore, a method based on property taxation that uniformly assesses only commercial properties does not justly distribute the burden of the SID in proportion to the benefit.

None of the benefits provided by the SID are aimed directly at residences and none of its budget is spent directly on residential properties. Although a portion of the SID budget is spent on beautification and street cleaning, services from which residents also benefit, a larger portion is spent on hospitality guards (who assist visitors to Morristown, not residents), business and retail recruitment, advertising campaigns and facade loans and grants to commercial and retail properties. In addition, the SID is responsible for aesthetic or cosmetic physical improvements that serve as

part of a larger effort aimed exclusively at benefitting commercial properties.

■ This Court set forth the limitations on the levying of special assessments for conventional local improvements in *McNally, supra,* sustaining the assessment to each property so long as it was "as nearly as may be in proportion to and not in excess of the peculiar benefit" received by the property. 75 *N.J.* at 40, 379 *A.*2d 446. Such assessments are "presumptively correct and the taxpayers [have] the burden of overcoming that presumption by clear and convincing evidence." *Id.* at 44–55, 379 *A.*2d 446.

Plaintiffs contend that real property tax assessments should never be the basis for determining special assessments. They assert that the various properties should be assessed differently based on the type of land-use. Office/hotel space, for example, should be assessed differently from retail store space, because retail stores receive greater benefits from the SID. In a report submitted to the trial court, plaintiffs compared the method of assessment in the Morristown SID to other SIDs. The Buffalo Place SID in Buffalo, New York, imposes charges based on three considerations: location, basis, and use. A Seattle SID, the object of litigation in *City of Seattle, supra,* differentiates the assignment of costs by type of land use, with retail paying a higher percentage than office properties. 787 *P.*2d at 42–43. The New Brunswick, New Jersey SID uses a similar method. The majority of SIDs in New Jersey, however, use the property value method of assessment, as does the Center City SID in Philadelphia.

Plaintiffs also rely on several cases to support their position that tax valuations should not be used as the basis for special assessments. Those cases, however, do not fully support that position. For example, not only did *Crampton v. City of Royal Oak,* 362 *Mich.* 503, 108 *N.W.*2d 16 (1961) not hold that special assessments based on real property valuations are invalid, but it acknowledged that depending upon the circumstances, special assessments may be apportioned on that basis. *Id.* at 24–25. Similarly, the critical flaw with the special assessment at issue in *Welch v. City of*

*Oconomowoc,* 197 *Wis.* 173, 221 *N.W.* 750 (1928) was not that it was constitutionally impermissible to use real property valuations as the basis for apportioning costs of the improvement. Rather, the flaw was that the relevant statutory language required apportioning the improvement cost on the basis of real property value as opposed to benefits conferred. *Id.* at 751. The special assessments authorized by the Morristown SID share no similar infirmities.

The Appellate Division was aware of the classical method to determine assessments strongly urged by plaintiffs, that is, "the difference between the market value of the land before and after the improvement." *McNally, supra,* 75 *N.J.* at 42, 379 *A.*2d 446. The Court found, however, that this method would be "overwhelming" to the SID, and would divert its existing resources to expert valuation of increased market value rather than to the services and improvements the SID was meant to provide.

The Appellate Division identified several other methods of apportioning the special assessment burden among the properties benefitting from SID improvements, which the court acknowledged might yield a fairer result. The court noted, however, that apportionment based on property size, front footage, and the "block by block" rule, as well as other factors relevant to benefit, are included in the tax assessment structure, and concluded that it was not unreasonable for Morristown to use the existing tax assessment structure to determine the SID assessment. The trial court also took this approach, noting in its final order upholding the special assessment formula applied in the SID, that it "does not exclude the possibility that a municipality might act more fairly and in a qualitatively better way if it were to use the more complex procedure suggested by the [plaintiffs' report]." The Appellate Division identified several aspects of the SID assessment that supported its fairness and reliability: (1) "the assessments will be adjusted" annually; (2) the ordinance will be amended "so that the commercial portion of all mixed-use properties within the SID would be assessed"; (3) "the assessor and MPI will

closely evaluate the nature of the programs and the benefits conferred every year to assure continuing fairness in the assessment process."

It is not unreasonable for Morristown to select one of the simpler methods of valuing benefits during the initial phase of the SID. The tax system offers several advantages in that it is updated periodically and provides property owners with a basis to challenge erroneous tax assessments and the derivative SID assessments. Although a more complex method might yield a fairer apportionment, it would be substantially more expensive and difficult to employ in the early stages of the SID.

## C.

The same analysis that supports the conclusion that the SID assessments are special assessments, and therefore are not subject to the Uniformity Clause of the Constitution, substantially forecloses plaintiffs' contention that the exclusion of residential properties from the assessment imposed on property in the SID constitutes an invalid exemption under the exemption provision of the tax clauses of the Constitution.

As earlier noted, *N.J. Const.* art. VIII, § 1, ¶2 grants the Legislature the ability to create statutory exemptions by general laws. "To be a general law, the tax exemption must be based on classifications which rest upon 'substantial distinctions' that have a 'logical and reasonable basis' and include all property 'falling within the named classification.'" *Town of Morristown v. Woman's Club of Morristown,* 242 *N.J.Super.* 654, 662, 577 *A.*2d 1309 (App.Div.1990), *aff'd,* 124 *N.J.* 605, 592 *A.*2d 216 (1991) (citations omitted). The exemption must be based on the use or some other characteristic of the property, rather than on the status of the owner. *Ibid.*

Both the debate surrounding the adoption of the constitutional tax clauses in 1947, and subsequent jurisprudence, point to a concern primarily with preferential tax treatment for specific privileged categories of industry or business. The drafters did not

intend to prohibit more general tax benefits or burdens to business or industry as a whole, such as the tax benefits provided by empowerment zones, reduced sales taxes in inner cities, or the tax burdens imposed by special improvement districts. *See Fanelli, supra,* 135 *N.J.* 582, 641 *A.*2d 541 (upholding ordinance prohibiting vendor from SID under minimum scrutiny analysis because SID ordinance is an economic regulation not affecting a suspect class).

The SID legislation meets the exacting classification standards that are applicable to real property taxes. *E.g., Town of Morristown, supra,* 124 *N.J.* 605, 592 *A.*2d 216 (upholding exemption for historical property because exemption based on physical status of building rather than on status of its owners). The exemption of residential properties is general in nature because it is based on a zoning classification rather than on the status of the owner, and because it is not directed at benefitting a particular industry. The exemption rests on the reasonable basis that SIDs are not designed to enhance residential properties, but rather "promote economic growth in local business districts," *Fanelli, supra,* 135 *N.J.* at 590, 641 *A.*2d 541, through cooperation among local businesses. *Id.* at 591, 641 *A.*2d 541. As the trial court noted, the overwhelming majority of New Jersey municipalities that have adopted SID ordinances have exempted residential properties because the legislation has a business improvement function.

### D.

■ Plaintiffs also raise the closely-related contention that because "the methodology used by Morristown results in an assessment that is not proportional with the benefit conferred," the special assessment violates the Takings Clause of the New Jersey Constitution and the Fifth Amendment to the United States Constitution. *N.J. Const.* art. I, ¶ 20; *U.S. Const.* amend. V. The analysis of whether the measure of an assessment on property is constitutional under due process and takings principles in the context of this case is essentially the same as that applicable under the tax clauses of our Constitution.

In respect of special assessments, it is well settled that "the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation." *Village of Norwood, supra,* 172 *U.S.* at 279, 19 *S.Ct.* at 191, 43 *L.Ed.* at 447; *McNally, supra,* 75 *N.J.* at 43, 379 *A.*2d 446; *Serkin v. Township of Ocean,* 201 *N.J.Super.* 392, 405, 493 *A.*2d 531, (Law Div.1983), *aff'd,* 201 *N.J.Super.* 409, 493 *A.*2d 540, *certif. denied,* 101 *N.J.* 308, 501 *A.*2d 964 (1985). In accordance with that well-settled rule, the Legislature provided in the SID legislation that:

> All assessments levied under this chapter for any local improvement shall in each case be as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement.
>
> [*N.J.S.A.* 40:56–27.]

In this constitutional context, plaintiffs seek strict compliance with this Court's definition of benefit as " 'the difference between the market value of the lands before the improvement and the market value of the land immediately after the improvement.' " *McQueen v. Town of West New York,* 56 *N.J.* 18, 23, 264 *A.*2d 210 (1970) (quoting *In re Public Service Electric & Gas Co.,* 18 *N.J.Super.* 357, 363–65, 87 *A.*2d 344 (App.Div.1952)). However, while noting that "the classical and perfect method is to obtain an expert appraisal of the dollar value of each individual parcel of land ante- and post improvement," the Court in *McQueen* pointed out that other methods would also be acceptable as long as they are just and equitable. *Id.* at 24, 264 *A.*2d 210.

The classical method of apportionment is not applicable in this case because of the difficulty of determining the immediate increase in value attributed to the creation of the SID. The method of assessment must necessarily be adapted to the benefit conferred. Where, as here, the nature of the benefit is general and intangible, and the quantum of the benefit is imprecise, the method of valuing that benefit based on property values is rational

and appropriate. Plaintiffs, as already demonstrated, have not offered any evidence to satisfy their burden of proving that the assessment does not match the benefit.

### E.

■ In determining whether the SID assessments are valid special assessments as a matter of constitutional construction, considerations of legislative purpose and intent and public policy are highly relevant.

■ Public policy and legislative will strongly impel the Court to exercise latitude when reviewing SID ordinances. The legislative findings expressed in the statute provide:

(1) that district management corporations may assist municipalities in promoting economic growth and employment within business districts; (2) that municipalities should be encouraged to create self-financing special improvement districts and designated district management corporations to execute self-help programs to enhance their local business climates; and (3) that municipalities should be given the *broadest possible discretion* in establishing by local ordinance the self-help programs most consistent with their local needs, goals and objectives.

[*N.J.S.A.* 40:56–65 (emphasis added).]

It is clear that the Legislature intended that SID assessments be considered special assessments. The framework of the enabling legislation provides that the SID would be financed by the properties especially benefited by the improvements. *N.J.S.A.* 40:56–72. The legislative scheme also ensures that SID assessments do not take on the characteristics of general taxes. The statute provides that funds generated by the SID assessment will be segregated into a special account and will be used only for SID purposes. *N.J.S.A.* 40:56–80(3)(e).

In weighing considerations of policy, the Court is enjoined to view the issue in a broader context. Forty states, including New Jersey, have adopted legislation enabling the creation of SIDs, which various states also term Business Improvement Districts, Community Development Districts, Municipal Improvement Districts, and Economic Development Districts. *See* David J. Kennedy, Note, *Restraining the Power of Business Improvement Dis-*

*tricts: The Case of the Grand Central Partnership*, 15 *Yale L. & Pol'y Rev.* 283, 290 (1996). Of these states, the vast majority have constitutional provisions requiring uniformity of taxation similar to New Jersey's, but they have yet to strike down SID legislation as unconstitutional. As of 1995, at least twenty-five other municipalities in New Jersey had established SIDs.

The urban setting in which SIDs are created is central to understanding the benefit offered by the Morristown SID. Urban sprawl, that is, a landscape dotted by planned office developments and malls connected by highways and thoroughfares, has resulted in the diminishing vitality of traditional city centers, such as Morristown's Green. Increasingly, office developments and shopping malls provide services associated with town centers, such as dry cleaning, pharmacies and food courts, while town centers, which already have such services as a result of being integrated communities, languish.

SIDs provide a quasi-public solution to this problem. SIDs are an attempt to achieve privately what municipal government has struggled unsuccessfully to do. *See New Jersey Coalition Against War in the Middle East v. J.M.B. Realty Corp.*, 138 *N.J.* 326, 346, 650 *A.*2d 757 (1994) (noting the decline of downtown business districts and rise of suburban shopping centers as centers of commercial and social activity). SIDs are organized and financed by property owners and merchants, operate on the basis of state and local laws, and use revenues garnered from self-taxation to finance various services and capital improvements not provided by the municipality. *See* John C. Bollens, *Special District Governments in the United States* 68 (1957).

These considerations are germane in determining the validity of the Morristown SID. The SID, as earlier noted, was formed as a response to declining economic conditions in Morristown and specifically to the closing of Macy's in the Town center. The reports of both parties indicated that the SID's activities were necessary to keep Morristown and its businesses competitive in a market increasingly dominated by suburban malls and office

parks. These reports furnish an evidentiary basis for the conclusion that SIDs offer a benefit to commercial property.

We conclude that the SID provides sufficiently identifiable benefits to the subject properties and that the special assessments are measured reasonably and fairly in proportion to the benefits conferred. Therefore, the enabling legislation and implementing ordinance have not created real property taxes and do not violate the tax clauses of the Constitution in allowing municipalities to exempt residential properties from the SID assessment. Further, because the benefits are substantial and the cost proportional to those benefits, the SID assessment is not an unconstitutional taking of property without compensation.

III

Plaintiffs also contend that in exempting residential properties, the SID violates the enabling statute as it existed prior to the 1995 amendment. That statute had been construed not to authorize the exemption of residential properties from SID assessments. The Appellate Division reasoned that because the 1995 amendment to the enabling statute was enacted in response to *Gonzalez, supra,* to "remedy what the Legislature perceived as a misapplication of the law," the amendment fell within the "curative" exception allowing for the retroactive application of the amendment. We agree.

"[T]here are well-settled rules concerning the circumstances in which statutes should be applied retroactively, where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only." *Gibbons v. Gibbons,* 86 *N.J.* 515, 522, 432 *A.2d* 80 (1981). Three situations generally warrant the retroactive application of an amendment or new statute: (1) where the Legislature has expressed an intent that the legislation be applied retroactively; (2) where the legislation is ameliorative or curative; and (3) where the expectations of the parties warrant retroactive application. *Id.* at 522–23, 432 *A.2d* 80; *Schiavo v. John F. Kennedy Hosp.,* 258 *N.J.Super.* 380, 385–

86, 609 A.2d 781 (App.Div.1992), aff'd, 131 N.J. 400, 620 A.2d 1050 (1993). The Court must also consider whether retroactive application of the amendment would result in manifest injustice to the adversely affected party. *Gibbons, supra,* 86 N.J. at 525, 432 A.2d 80.

The 1995 amendment qualifies under the curative exception for retroactive application. It was enacted in direct response to the Appellate Division's *Gonzalez* decision to remedy what the Legislature perceived as a misapplication of the law. The amendment did not alter the act in any substantial way, but merely clarified the legislative intent behind the act. The report of the Assembly Local Government Committee, appended to the Assembly Bill, states: "this legislation clarifies that a municipal ordinance establishing a[SID] may exempt residential properties ... from the assessment." Assembly Local Government Committee, *Statement to Assembly Bill No. 2260,* at 2 (Dec. 12, 1994). The Assembly Statement to A–2260 was subsequently enacted as L. 1995, c. 170.

Additionally, the expectations of many of the New Jersey municipalities that have enacted SIDs, and the fact that retroactive application would not result in any injustice to plaintiffs, allow the amendment to be applied retroactively. In light of the amendment to the enabling statute, the Ordinance does not violate the enabling legislation by excluding residential properties from the SID assessment.

Plaintiffs further argued that they had not received adequate notice of the adoption of the ordinance and that they were denied due process rights during the trial court hearing. We agree with the Appellate Division's dismissal of those contentions.

Both plaintiffs had actual and constructive notice of the adoption of the SID Ordinance. All of the necessary mailings and publications were properly distributed, in accordance with the required statutory notice provisions. In no case were any of the notices to plaintiffs returned as undeliverable. In respect of Roc–Jersey, their property manager was an active participant in the establish-

ment of the SID. Thus, Roc–Jersey had constructive notice of the SID throughout each of its various stages.

### IV

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—none.