ARTHUR AND MATILDA McQUEEN, *ET AL.*, PLAINTIFFS-APPELLANTS, v. TOWN OF WEST NEW YORK IN THE COUNTY OF HUDSON, BERNARD J. McDONALD, TAX COLLECTOR OF THE SAID TOWN OF WEST NEW YORK, AND THE BOARD OF ASSESSORS OF THE SAID TOWN OF WEST NEW YORK, DEFENDANTS-RESPONDENTS.

Argued February 3, 1970—Decided April 20, 1970.

Mr. *Sydney I. Turtz* argued the cause for the appellants.

Mr. *William V. Breslin* argued the cause for the respondents (*Messrs. Breslin and Monaghan,* attorneys; *Mr. Samuel L. Hirschberg,* of counsel).

The opinion of the court was delivered by

HANEMAN, J. This appeal concerns a special assessment levied by Town of West New York (West New York) pursuant to *N. J. S. A.* 40:56–1 *et seq.*

In 1954 West New York by ordinance authorized the construction of a parking lot commonly known as Van Buren Parking Lot. In 1955 said town also by ordinance authorized the construction of a parking lot known as Madison Parking Lot. The ordinances each provided for the completion of the facilities as a local improvement as provided by *N. J. S. A.* 40:56–1 *et seq.*

In 1957, a board of special assessors levied assessments against the properties allegedly benefited by the improvement, which assessments having been attacked by an Action in Lieu of Prerogative Writs, were set aside. A reassessment was similarly voided (for a more complete history see *Kastens v. West New York*, 88 *N. J. Super.* 224 (App. Div. 1965)).

On November 2, 1961, in pursuance of a resolution of the governing body, the Board of Assessors proceeded to levy a third assessment. The assessment plans were presented at a public hearing on September 16, 1963. The method of levying the tax which the Board adopted was as follows: The true value of the lands allegedly benefited was established for the periods 1955-1957 and 1961-1963 by a market report prepared by a tax research analyst. The report indicated that the property not in the parking area increased in valuation from the 1955–1957 period to 1961–1963 period by 24.56% and that the property in the parking area increased 37.46%. The 12.90% difference between the relative gains in the different sections was attributed to the parking facilities. The Board concluded that there was between a 10% and 15% increase in the 1957 assessed value of all properties in the vicinity of and attributable to the parking lots. The assessment for general taxes for 1957 was based neither on true value nor common level. A true reevaluation report

was made for 1958 which was not, however, adopted by the municipality as a general assessment basis. The Board used the 1957 assessed value as the base for its special tax computation. After applying 10% to the 1957 assessed value of the lots in the parking area section, except those fronting on the facility, and as to these latter, 15%, it was discovered that the total raised by such an assessment exceeded the actual cost of the improvement. The individual assessments were then reduced by 12% which brought the total somewhat below the actual cost and in conformity with the statute, *N. J. S. A.* 40:56-24.

Subsequent to the completion of construction, parking meters were installed in the parking lots. Since April 1965, the lots have been operated by an independent parking authority under a contract which provides that the authority may not use the revenues from the lots without permission of the town.

Plaintiffs filed an Action in Lieu of Prerogative Writs contesting the validity of the assessment which was confirmed after trial by the Law Division in an unreported opinion. Plaintiffs then appealed to the Appellate Division which in turn affirmed substantially for the reasons given by the Law Division. This Court granted plaintiffs' petition for certification, 54 *N. J.* 521 (1969). The order granting certification provided that petitioners were to argue particularly:

(1) the question whether the valuations determined by a reevaluation should be used in allocating the assessment; and

(2) whether all or some part of the cost of the improvement should be borne by general taxation because of parking meter revenues.

Plaintiffs advance a number of grounds as bases for reversal. Of these we shall discuss only the question of the validity of the assessment and the above quoted two noted questions. We find the balance without merit for the reasons stated by the Law Division.

# I

*Is the assessment valid and should the valuations determined by a reevaluation be used in allocating the assessment?*

In assaying the validity of the assessment, several of the basic statutory provisions must be remembered:

*N. J. S. A.* 40:56–26 provides in part:

"\* \* \* [The commissioners] shall thereupon make a just and equitable assessment of the benefits conferred upon any real estate by reason of such improvement having due regard to the rights and interests of all persons concerned, as well as to the value of the real estate benefited."

*N. J. S. A.* 40:56–27 provides:

"All assessments levied under this chapter for any local improvement shall in each case be as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement."

"Peculiar benefit, advantage or increase in value" has been defined as follows:

"The foundation of the power to lay a special assessment or a special tax for a local improvement of any character, whether it be opening, improving or paving a street or sidewalk or constructing a sewer, or cleaning or sprinkling a street, is the benefit which the object of the assessment or tax confers on the owner of the abutting property, or the owners of property in the assessment or special taxation district, which is different from the general benefit which the owners enjoy in common with the other inhabitants or citizens of the municipal corporation. \* \* \*

" 'Benefit' is the increment of value to land affected by improvement. It represents the difference between the market value of the lands before the improvement and the market value of the land immediately after the improvement." *In re Public Service Electric and Gas Co.*, 18 *N. J. Super.* 357, 363–365 (App. Div. 1952).

The most troublesome problem involved in making a proper local assessment is the ascertainment of the

difference "between the market value of the lands before the improvement and the market value of the lands immediately after the improvement." As evidence, observe the multitude of opinions treating of this subject. Concededly, the classical and perfect method is to obtain an expert appraisal of the dollar value of each individual parcel of land—ante and post improvement. This is not to say, however, that some other method may not as well result in a "just and equitable assessment of the benefits conferred." One possible course to pursue to attain that objective is that here employed, *i. e.,* the ascertainment of the actual value of the properties involved immediately preceding the improvement and the percentage of increase in that value immediately succeeding and rationally attributable to the improvement. The keystone to such a method is self-evidently the reliability of the ante and post values. It should also be noted that the Board corroborated their conclusion by viewing all the properties involved, taking photographs thereof, examining zoning ordinances, considering the size and shape of the properties, reviewing past sales and studying traffic flow. In the matter *sub judice,* although very little testimony was taken as to the 1955-1957, 1961-1963 study, plaintiffs failed to adduce any affirmative testimony to discredit the findings of that survey.

*N. J. S. A.* 40:56–33 provides in part:

"* * * All assessments for local improvements shall be presumed to have been regularly assessed and confirmed and every assessment or proceeding preliminary thereto shall be presumed to have been regularly made or conducted until the contrary be shown."

As stated in *In re Public Service,* 18 *N. J. Super.* 357 (App. Div. 1952), "In the absence of other proof, the commissioner's report is conclusive [on benefits]" and "the burden of overcoming the presumption of validity is cast upon the owner and it must be by clear and cogent proof." As far as the truncated record discloses, plaintiffs have failed to adduce any testimony to contradict the conclusion of the

market report that the property involved had an increase
in value of 12.90% over the pre-improvement value attrib-
utable to the improvement. The position that those prop-
erties fronting the parking lot enjoyed a greater increase
than those more remote also remains uncontradicted. The
period for which the values were ascertained is sufficiently
close to the date of the improvement to reasonably reflect
the required "immediately before and after" figure for the
assessment purposes. This is especially so in view of the
lapse of time since the completion of the improvement, *i. e.,*
1956, which is now some 14 years, and the improbability
that a more accurate appraisal could now be developed.
The assessment for the peculiar benefit cannot exceed this
12.90% percentage of the pre-improvement true value. *N.
J. S. A.* 40:56–27. Nor can the total of all the assessments
exceed the cost of the improvement. *N. J. S. A.* 40:56–24.
It may, therefore, be necessary to reduce the assessment per-
centage below 12.90%.

 However, as it is now admitted that the 1957 gen-
eral assessment did not represent true nor common value,
the application of the above percentage to said 1957 assess-
ment values is unjustified. The assessment upon that basis
did not result in a "just and equitable assessment."

Plaintiffs' brief states:

"* * * it is respectfully urged that the valuations determined by
the re-evaluation of 1958 should be used in allocating the individual
assessments."

Defendants at oral argument did not dispute the validity
or accuracy of the 1958 valuation. The year 1958 is suf-
ficiently close to the pivotal year—1956—to reflect the
true valuation preceding the completion of the improve-
ment and to form a reasonable basis for a computation of
a just and equitable assessment. Accordingly, this matter
will be remanded for a reassessment, using the proper per-
centage of the 1958 valuations.

## II

*Should all or some part of the improvement be borne by general taxation because of parking meter revenues?*

*N. J. S. A.* 40 :56–1.1 authorizes the acquisition and construction of parking facilities as a local improvement. The decision of whether a particular improvement should be undertaken as a general or local one rests within the sound discretion of the municipality. *Hoglund v. City of Summit,* 28 *N. J.* 540 (1959) ; *Leggett v. Plainfield,* 97 *N. J. L.* 341 (E. & A. 1921). That discretion will not be upset "in the absence of fraud or palpable abuse of discretion. * * * The decision, if there be any reasonable basis to support it, is conclusive." *Hoglund, supra,* at *p.* 552. Plaintiffs do not argue that the municipal decision to provide the accommodations as a local improvement was motivated by fraud nor that it evidenced a palpable abuse of discretion. Nor do we see under the facts here present how such an argument could be successfully urged. The subsequent installation of parking meters has no bearing upon whether the benefit of the improvement is primarily special and local or general. The fact remains that the facilities were built in response to a request of local businessmen who emphasized the benefits they anticipated they would receive therefrom. There can be no doubt that plaintiffs' lands increased in value to some extent as a result of the construction.

Plaintiffs conceded at trial that the installation of parking meters *per se* would not invalidate the assessment. They further conceded that even if revenues exceeded maintenance expenses, the assessment would not be invalid. They asserted that the sole evil resulting from the use of parking meters was defendant's failure to segregate the revenue therefrom and prohibit its use for purposes other than maintenance. This is not a problem contemplated by or involved in this litigation and is therefore not before us.

Remanded for reassessment in accordance with the above.

*For remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.