SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Carol Crispino v. Township of Sparta (A-16-19) (083171)**

**Argued March 16, 2020 -- Decided July 22, 2020**

**ALBIN, J., writing for the Court.**

In this appeal, the Court considers a resolution, passed by defendant Township of Sparta (Township), that imposed a special assessment on fifty-eight properties to recoup public funds expended in the rehabilitation of a private dam owned by the Glen Lake Beach Club, Inc. (Beach Club).

The Beach Club owns Glen Lake and the Glen Lake Dam, which impounds the water that forms the lake. All owners of real estate within a specifically delineated perimeter near the lake known as the "reserve" -- as set forth in the Beach Club's bylaws -- are automatically eligible for membership and voting rights.

To fund necessary repairs to the dam, the Beach Club received a loan from the New Jersey Department of Environmental Protection's Dam, Lake and Stream Project Fund. In accordance with N.J.S.A. 58:4-12(d)(1), the Township agreed to serve as a co-borrower: the Beach Club would be responsible for repayment of the loan and the Township would act as the "collection agent" by passing an ordinance imposing a special assessment on "real estate in the Township benefitted by [the dam] improvement."

The Township Council enacted Ordinance 16-03, which authorized the Township to impose a special assessment on "the benefitted properties" of the dam project, and Ordinance 16-04, which established an Assessment Commission to identify the benefitted properties and to determine the assessment to be imposed on those properties.

In March 2016, the Council appointed Scott Holzhauer, a real estate appraiser and consultant, to assist the Assessment Commission in fulfilling its charge. Holzhauer recommended that fifty-eight properties that fell within the Beach Club's "reserve" be subject to the special assessment to repay the loan. The owners of those properties received a "peculiar benefit" or "advantage," according to Holzhauer, because they have the option to become members of the Beach Club and to enjoy its recreational amenities. Holzhauer devised an approach to allocate the special assessment by dividing the properties in the "reserve" into three separate categories: (1) seven lakefront properties, (2) eleven lakeview properties with lake access, and (3) the forty remaining properties.

1

In that three-tiered approach, Holzhauer assigned "share values" to each category, allocating the highest share value to lakefront properties (2.0), a lower value to lakeview/access properties (1.5), and the lowest value to all other properties (1.0). Holzhauer's report does not explain the methodology he followed in assigning the values to the three classes of property.

Despite opposition from some residents, the Township Council passed Resolution 6-1, adopting the recommendations made in Holzhauer's report. Plaintiffs filed an action in lieu of prerogative writs in Superior Court challenging the validity of Resolution 6-1. The court voided Resolution 6-1, reasoning that the Township arbitrarily applied the special assessment to plaintiffs' properties. The Appellate Division reversed, and the Court granted certification. 239 N.J. 600 (2019).

**HELD:** The expert report relied on by the Township did not apply any reliable methodology to assure that the assessment allocating the costs among the properties was "in proportion to and not in excess of the benefits conferred," as required by N.J.S.A. 58:4-12(d)(1) and other statutes. The Court is constrained to invalidate Sparta Township Resolution 6-1, which imposes a special assessment on plaintiffs' properties to recoup the costs of the dam restoration project. The Township must pass a resolution allocating costs based on a valid methodology in accordance with the applicable statutes and relevant case law.

1. The Dam, Lake and Stream Project Fund provides a means for the owner of a private dam, such as a lake club or association, to secure a loan for the rehabilitation project. N.J.S.A. 58:4-12(d)(1) provides two important features: (1) the cost of an improvement funded under this section must be assessed "in the same manner as provided for the assessment of local improvements generally under chapter 56 of Title 40 of the Revised Statutes," and (2) the assessment against the properties benefitted must be "in proportion to and not in excess of the benefits conferred." The plain language of the statute makes clear that the Legislature intended to incorporate the law governing the special assessments for local improvements under Title 40 into Title 58's assessment for private dam and lake improvements financed by public funds. By that act of incorporation, the Legislature did not have to repeat the procedural and substantive standards for the imposition of an assessment already set forth comprehensively in Title 40. The Township understood that the special assessment process was governed by both Title 58 and Title 40. (pp. 17-20)

2. The justification for any special assessment levied for the purpose of financing a local improvement, N.J.S.A. 40:56-27, or an improvement to a privately owned dam, N.J.S.A. 58:4-12, is that the assessed property has received a benefit from the improvement. If there is no "peculiar benefit, advantage or increase in value" to the property from the improvement, then there is no basis for imposing an assessment. See N.J.S.A. 40:56-27. Under relevant case law, the benefit to the assessed property must be certain rather than

speculative, although it may arise in the future, and the benefit to the specific property must be substantially greater than to the public in general. An assessment, moreover, must be proportionate to the benefit conferred on the property. The proportionality requirement is measured by a standard of reasonableness, not by scientific precision. See N.J.S.A. 58:4-12(d)(1) ("in proportion to . . . the benefits conferred"); N.J.S.A. 40:56-27 ("as nearly as may be in proportion to"). (pp. 21-23)

3. The test often used to determine the value of the benefit and the amount of the assessment is the difference between the market value of the land before and after the improvement. Nevertheless, no inflexible formula applies, nor is mathematical precision required. Another assessment methodology may be used, so long as the result is a just and equitable assessment of the benefits conferred. The value of the benefit conferred on the assessed property by the improvement must be established by reliable proof. To state the obvious, a municipality cannot impose an assessment based on an arbitrary methodology. (pp. 23-24)

4. The Holzhauer report, which was adopted by the Assessment Commission and the Township Council, did not comport with the statutory mandates and the governing case law. Holzhauer simply concluded that property owners listed within the geographical ambit of the Beach Club's bylaws received a "benefit" because of "their right, by property ownership and/or interest, to become a member of the club and therefore have access to the lake and other amenities." Plaintiffs suggest that the Beach Club randomly placed their properties in the "reserve," pointing to properties an equal distance from the lake, whose owners are not automatically eligible for membership in the Beach Club. Additionally, there is lack of certainty whether all property owners within the Beach Club "reserve" are, in fact, automatically eligible for membership. Even assuming that plaintiffs were eligible to become members of the Beach Club and that such membership conferred on them a benefit from the dam restoration project, the Holzhauer report does not set forth a rational methodology for the assessments imposed on plaintiffs' properties. Holzhauer did not explain how he arrived at assigning value shares to each category or refer to any reliable methodology to support his opinion. (pp. 25-28)

5. Special assessments cannot be imposed on properties based on arbitrary categorizations or speculative valuations. The Court concludes that the presumption of validity accorded to Resolution 6-1 has been overcome by clear and convincing evidence and invalidates Resolution 6-1 as an arbitrary and unreasonable law. (pp. 28-29)

**REVERSED and REMANDED to the Sparta Township Council.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-16 September Term 2019
### 083171

Carol Crispino, Vilma Verber,
Mark Edwards, Jorge Cabrera,
Stephen Cappadora, Paul O'Keefe,
Kenneth Gardner, and Mary Gardner,

Plaintiffs-Appellants,

v.

Township of Sparta,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 16, 2020 | July 22, 2020 |

John E. Ursin argued the cause for appellants (Schenck, Price, Smith & King, attorneys; John E. Ursin and Sandra Calvert Nathans, on the briefs).

Thomas N. Ryan argued the cause for respondent (Laddey, Clark & Ryan, attorneys; Thomas N. Ryan and Jessica A. Jansyn, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

Defendant Township of Sparta (Township) passed a resolution imposing a special assessment on fifty-eight properties to recoup public funds expended in the rehabilitation of a private dam owned by the Glen Lake Beach Club, Inc. (Beach Club). Under the Beach Club's bylaws, the owners of the fifty-eight properties -- all within close proximity to Glen Lake -- are eligible to join the Beach Club and enjoy its amenities.

Eight of those property owners (plaintiffs) filed an action in lieu of prerogative writs challenging the validity of the special assessment. Plaintiffs are not members of the Beach Club, and they do not own properties either on the lake or with a view of the lake. They claimed that the special assessment, which allocates the costs for the restoration of the dam among the fifty-eight properties, was not in proportion to any benefit they received, thus violating N.J.S.A. 58:4-12(d)(1). Plaintiffs attacked the expert appraiser's report relied on by the Township, asserting that it offered no methodology or justification for imposition of the assessment on their properties and therefore it constituted a "net opinion."

The trial court agreed. The court determined that the expert report did not follow any discernible methodology in allocating the cost for the dam restoration among plaintiffs' properties and therefore declared the resolution imposing the special assessment arbitrary and void. The Appellate Division

2

reversed, finding within the four corners of the expert report a sufficient basis to justify the special assessment on plaintiffs' properties, and reinstated the resolution.

We come to a different conclusion than the Appellate Division. Although plaintiffs' properties may have received a benefit from the dam restoration project, the expert report relied on by the Township did not apply any reliable methodology to assure that the assessment allocating the costs among the properties was "in proportion to and not in excess of the benefits conferred," as required by N.J.S.A. 58:4-12(d)(1) and other statutes. The Legislature has delegated to municipalities the power to impose special assessments on property owners to fund certain improvements. That power, however, may not be arbitrarily exercised. The presumption of validity accorded to a municipal law cannot shield a special assessment based on a methodology that lacks any indicia of reliability. Accordingly, we are constrained to invalidate Sparta Township Resolution 6-1, which imposes a special assessment on plaintiffs' properties to recoup the costs of the dam restoration project.

We therefore reverse the judgment of the Appellate Division. The Township must pass a resolution allocating costs based on a valid methodology in accordance with the applicable statutes and relevant case law.

3

I.

A.

The Glen Lake Beach Club -- a private club located in the Township of Sparta -- owns Glen Lake and the Glen Lake Dam, which impounds the water that forms the lake. The Beach Club offers various amenities to its members and their guests, such as boating, fishing, swimming, and social activities. Eligibility for membership in the Beach Club is governed by the organization's bylaws. All owners of real estate within a specifically delineated perimeter near the lake known as the "reserve" -- as set forth in the Beach Club's bylaws -- are automatically eligible for membership and voting rights, provided they apply for membership and satisfy the Club's membership requirements.[1]

Other Township residents who live outside of the "reserve" can apply for "special membership" in the Beach Club if sponsored by a voting member. Those residents granted special membership by the Beach Club's governing body may enjoy all of the Club's amenities but do not have voting rights.

In the early 2000s, the New Jersey Department of Environmental Protection (NJDEP) classified the Glen Lake Dam as a "high hazard dam" requiring rehabilitation. To fund the repairs necessary for the dam to meet the

---

[1] The record reflects that the geographical boundaries of the "reserve" have not changed since the 1970s.

state's regulatory requirements, the Beach Club applied for and received a $725,000 loan from the NJDEP's Dam, Lake and Stream Project Fund, N.J.S.A. 58:4-12. In accordance with N.J.S.A. 58:4-12(d)(1), the Township agreed to serve as a co-borrower on the loan. The co-borrower agreement between the Beach Club and the Township provided that the Beach Club would be responsible for repayment of the loan -- $925,726 in principal, interest, and related costs -- and the Township would act as the "collection agent" by passing an ordinance imposing a special assessment on "real estate in the Township benefitted by [the dam] improvement."

In February 2016, the Township Council enacted Ordinances 16-03 and 16-04. Ordinance 16-03 authorized the Township to impose a special assessment on "the benefitted properties" of the dam project, and Ordinance 16-04 established an Assessment Commission to identify the benefitted properties and to determine the assessment to be imposed on those properties.

In March 2016, the Council appointed Scott Holzhauer, a real estate appraiser and consultant, to assist the Assessment Commission in fulfilling its charge. More than a year earlier, before his appointment, Holzhauer had submitted a written proposal to the Township setting forth a market-value approach in assessing the benefit that properties received from the dam project. Under that approach, the Township would appraise the market value of each

affected property before and after the dam rehabilitation project. The difference between the property's market value before and after the project would represent the property's enhanced value.

In a report dated June 22, 2016, Holzhauer submitted his consulting report to the Assessment Commission. Holzhauer identified fifty-eight properties that benefitted from the Glen Lake Dam Rehabilitation Project. He recommended that those properties be subject to the special assessment to repay the loan received from the NJDEP's Dam, Lake and Stream Project Fund. The fifty-eight properties that Holzhauer proposed for the special assessment came from a list of sixty-five properties that fell within the Beach Club's "reserve," an area near the lake delineated in the organization's bylaws.[2] Seven of the sixty-five properties were exempt from the special assessment for various reasons, such as by the terms of the co-borrower agreement or the NJDEP loan agreement. The owners of the fifty-eight other properties were eligible for voting membership in the Beach Club, even though a number had chosen not to become Club members.

Holzhauer's report acknowledged that, by statute, the special assessment on the fifty-eight properties must be proportionate to "and not in excess of the

_____

[2] Holzhauer transposed a map of the Beach Club's "reserve" onto the then-current Township tax map.

peculiar benefit, advantage or increase in value" from the dam project, quoting N.J.S.A. 40:56-27. The owners of the fifty-eight properties received a "peculiar benefit" or "advantage," according to Holzhauer, because they have the option to become members of the Beach Club and to enjoy its recreational amenities. The report states that "[t]his benefit serves as an enhancement to property value for these property owners," thus distinguishing them from property owners outside the "reserve," except for those who had availed themselves of special membership. In explaining the reasons for imposing the special assessment on the properties within the "reserve," the report states that "[o]wnership of property in a lake community . . . brings with it the expectation of recreational amenities and scenic views that each contribute to the value and desirability of the property." The report adds, however, that those rewards must be balanced against the "risk" associated with the "survival" of a dam that "is generally crucial to property value for owners that have located within the lake community."[3]

Holzhauer devised an approach to allocate the special assessment by dividing the properties in the "reserve" into three separate categories:

___

[3] The report noted that if the Beach Club did not undertake the dam rehabilitation project, then the NJDEP possessed the authority to do so under N.J.A.C. 7:20-2.9 and to recoup the costs by imposing a lien on the benefitted properties within the "reserve."

7

(1) seven lakefront properties, (2) eleven lakeview properties with lake access, and (3) the forty remaining properties. In that three-tiered approach, Holzhauer assigned "share values" to each category, allocating the highest share value to lakefront properties (2.0), a lower value to lakeview/access properties (1.5), and the lowest value to all other properties (1.0).[4] The following chart sets forth the special assessment imposed on each class of property over a fifteen-year period -- the period required to accomplish the repayment of the loan:

| Number Of Properties | Value Share Summary | Share | Payment/Year | Special Assessment Over 15 Years |
|---|---|---|---|---|
| 7 | Lakefront | 2.0 | $1750.87 | $26,263 |
| 11 | Lake View/Access | 1.5 | $1313.13 | $19,697 |
| 40 | Other Properties In The "Reserve" | 1.0 | $875.40 | $13,131 |
| Total Assessment To Be Collected From All Properties | | | | $925,726 |

Holzhauer's report does not explain the methodology he followed in assigning the values to the three classes of property -- other than presenting his conclusion that the properties closest to the lake received the greatest benefit

[4] The lakefront properties "enjoy unimpeded direct access to the lake, along with the potential for establishing lake edge improvements," such as docks. The lake-access lots are located "immediately across the street from the lake, enjoying direct pedestrian access to the lake and generally unobstructed views." The remaining properties -- assigned the lowest share value -- do not enjoy any of the direct benefits of lakefront and lake-access properties but have proximity to the lake and the option of joining the Beach Club.

8

from the dam rehabilitation project and that the properties further from the lake received a lesser benefit.

After conducting a public hearing and considering public comments, in June 2016, the Assessment Commission recommended that the Township Council adopt Holzhauer's "report and formulaic approach" in allocating the special assessment.

During Township Council public meetings, a number of property owners in the Beach Club's "reserve" expressed their objections to the proposed special assessment. The property owners made various complaints, for example, alleging that their deeds, including the chain of title, did not alert them to the potential of a special assessment; that the boundary lines of the 1970s bylaws did not include some of the targeted properties; and that the bylaws had been amended in the 2000s to widen the perimeter of the "reserve." Sylvia Cappadora stated that, although the Beach Club claimed that the property owners "had the ability to join the lake association," she -- a thirty-four-year resident of the "reserve" -- had been told when she attempted to join that the Club was not taking new members.

Despite opposition from some residents, on August 23, 2016, the Township Council passed Resolution 6-1, adopting the recommendations made

9

in Holzhauer's report, including the special assessment of $925,726 to be collected from the fifty-eight property owners in the Beach Club's "reserve."

B.

On September 12, 2016, plaintiffs Carol Crispino, Vilma Verber, Mark Edwards, Jorge Cabrera, Stephen Cappadora, Paul O'Keefe, Kenneth Gardner, and Mary Gardner filed an action in lieu of prerogative writs in Superior Court challenging the validity of Resolution 6-1. In their complaint, plaintiffs alleged that the Township Council failed to conduct a fair-market-value analysis to determine whether their properties received a "benefit" from the dam rehabilitation project, or the extent of any such benefit, and arbitrarily placed their properties "in the assessment area." Plaintiffs claimed that, without some showing that the project conferred a "benefit" on their properties, the special assessment violated N.J.S.A. 40:56-27, and therefore Resolution 6-1 should be declared void.[5]

---

[5] The complaint also alleged other bases for striking down Resolution 6-1: a councilperson's purported conflict of interest that tainted the Township Council proceedings, as well as purported violations of the Open Public Meetings Act and the Open Public Records Act. Although we granted certification on the conflict-of-interest issue, it is not relevant to our disposition of this appeal and therefore we need not reach it. Nor in this procedural history will we discuss other issues raised in plaintiffs' complaint that were decided by the trial court and Appellate Division.

C.

In a hearing before the Honorable Stuart A. Minkowitz, A.J.S.C., the parties relied on various submissions, such as the Beach Club's bylaws, the minutes of the Township Council meetings, and the Holzhauer report. In a written opinion, Judge Minkowitz voided Resolution 6-1, reasoning that the Township arbitrarily applied the special assessment to plaintiffs' properties.

In reaching that decision, the court acknowledged the presumption of validity that attaches to municipal action. The court, however, recognized that a Township cannot levy a special assessment on property owners for a local improvement unless the improvement confers some benefit on the assessed property, in accordance with N.J.S.A. 40:56-27. The court noted that the Township Council relied on the Holzhauer report in passing the special assessment, but the report "did not use any stated methodology for deciding which houses would be burdened by the special assessment." Although Holzhauer did not have to use a "fair market value benefit analysis," the court declared that the expert had "to apply a non-arbitrary methodology" to justify imposing a special assessment on plaintiffs' properties. The court found that Holzhauer's reliance on the Beach Club's bylaws to decide the reach of the special assessment ceded to a private entity the "indiscriminate power" to

11

amend its bylaws to include, if it chose, the entire Township to contribute to the assessment -- a "ludicrous result" in the court's view.

Judge Minkowitz compared the Holzhauer report to a "net opinion" -- an opinion resting "on unfounded speculation and unquantified possibilities," quoting Townsend v. Pierre, 221 N.J. 36, 55 (2015). The court concluded that, in imposing the special assessment, the Township's reliance on an expert report devoid of any meaningful methodology was "arbitrary and unreasonable." The court held that "[t]he Township must begin the special assessment process anew, using an expert report that relies on . . . factual bases and a methodology that is reliable and not arbitrary," citing ibid.

In denying the Township's motion for reconsideration, the court further elaborated that the Holzhauer report did not show that the properties subject to the special assessment -- based on the Beach Club's bylaws -- "would receive a benefit from the Project, simply because those properties were eligible for membership." Nor had the Township shown, the court stated, that "membership even had value."

D.

In an unpublished opinion, the Appellate Division reversed the trial court's voiding of Resolution 6-1. It determined that the Township Council properly relied on the methodology in the Holzhauer report and that the

12

Council's adoption of Resolution 6-1 and the accompanying special assessment "was neither arbitrary nor unreasonable."

The Appellate Division rejected the notion that the rules of evidence apply to proceedings before a municipal body considering the imposition of a special assessment, quoting N.J.R.E. 101(a)(4) (stating that "proceedings before administrative agencies shall not be governed by [the rules of evidence]," with the exception of the rule governing privileges). "On that basis alone," the Appellate Division reasoned, the trial court erred in applying "the net opinion rule to bar Holzhauer's unrefuted methodology."

Assuming that the net opinion rule applied, the Appellate Division was satisfied that Holzhauer's report "sets forth the 'why' and 'wherefore' of his methodology." It did not discern any arbitrariness in imposing a special assessment on plaintiffs' properties, given that they received, under N.J.S.A. 40:56-27, a "peculiar benefit" or "advantage" from the dam rehabilitation project due to their "proximity to the lake and [the] recreational amenities [available] 'through optional membership.'" The Appellate Division concluded that plaintiffs had failed to demonstrate "by clear and convincing evidence[] that the challenged decision was not 'just and fair,'" quoting N.J.S.A. 40:56-54.

We granted plaintiffs' petition for certification. 239 N.J. 600 (2019).

Plaintiffs argue that the Township's imposition of a special assessment on their properties, which they allege received no benefit from the dam rehabilitation project, was arbitrary and unreasonable. Plaintiffs describe themselves as property owners who fall within the Beach Club's "reserve" only by the grace of the Club's bylaws. They state that (1) they have "no lake view or lake access except by crossing a very busy road"; (2) though eligible to join this private Club, they have chosen not to do so; (3) they purchased their homes with no obligation to pay Beach Club fees; and (4) "they never expected to be burdened with a special assessment to repair a dam owned by . . . a private club, to which they did not belong."

Plaintiffs emphasize that the possibility or eligibility for membership in a private beach club is not an "actual benefit" under the relevant statutes and that the true test of whether they received a benefit from the dam project is any difference in the market value of their properties before and after the project's completion. Plaintiffs point out that, during a Township Council meeting, one homeowner within the "reserve" asserted that she was denied membership in the Beach Club when she attempted to join. Plaintiffs complain not only that their properties were chosen for the special assessment by a random selection

-- inclusion in the Beach Club's bylaws -- but also that the Township made no showing that the approximately $1000 annual assessment over fifteen years was proportionate to any benefit conferred.

In sum, plaintiffs submit that the Appellate Division erred in upholding Resolution 6-1 without any proof that the dam project benefitted their properties or that the special assessment was in proportion to any benefit received, as required by N.J.S.A. 58:4-12(d)(1) and N.J.S.A. 40:56-27.

B.

The Township counters that the Holzhauer report provided the Township with a sufficient basis to impose the special assessment on plaintiffs' properties. According to the Township, plaintiffs' eligibility to become members of the Beach Club since at least 1979 was a "benefit" under N.J.S.A. 58:4-12(d)(1). From the Township's perspective, the Beach Club had conferred on plaintiffs "the unique benefit of the ability to manage and control the lake, dam, and associated facilities." The Township contends that, in determining the amount of the assessment, it was not required to analyze whether the market value of plaintiffs' properties increased as a result of the dam project. It asserts that the standard governing public improvements, N.J.S.A. 40:56-27, which refers to "increase in value," is different from the "more flexible standard" governing private dam improvements, N.J.S.A. 58:4-

15

12(d)(1), which refers to "benefits conferred." The true test, the Township maintains, is whether the special assessment when measured "against the real estate benefited [is] thereby in proportion to and not in excess of the benefits conferred," quoting N.J.S.A. 58:4-12(d)(1).

The Township rejects plaintiffs' use of an unsworn statement made by a homeowner within the "reserve" during a Township Council meeting to support the proposition that plaintiffs did not necessarily have the option to join the Beach Club. The Township claims that plaintiffs have presented a "moral argument," not a legal one, "that only current [Beach Club] members should be 'saddled' with the cost of the dam improvements." It submits that "limiting the assessment to current members could result in the perverse incentive for members to withdraw, leaving no one managing or running the club and, more importantly, no one to pay for the dam improvements, which benefitted real estate."

For those reasons, the Township urges that we affirm the Appellate Division.

### III.

The issue before us is whether Sparta Township Resolution 6-1, which imposed a special assessment on plaintiffs' properties for the repayment of a publicly funded loan that financed the rehabilitation of a dam owned by a

16

private lake club to which plaintiffs did not belong, complies with N.J.S.A. 58:4-12 and other state laws.

We begin with the well-established principle that municipal legislation enjoys a presumption of validity, and that courts will not invalidate an ordinance that bears a rational relationship to a legitimate objective and is not arbitrary or unreasonable. See N.J. Shore Builders Ass'n v. Township of Jackson, 199 N.J. 38, 54-55 (2009). Plaintiffs and the Township dispute whether Resolution 6-1 complies with state law. Our first task is to identify the state laws that govern the municipal action in this case.

A.

After the NJDEP determined that the Glen Lake Dam needed to be rehabilitated because of its hazardous condition, the Beach Club looked to the Dam, Lake and Stream Project Fund, N.J.S.A. 58:4-12, to finance the project.

The Legislature enacted the Dam, Lake and Stream Project Fund to provide a financial source for the restoration and repair of private dams without burdening municipal capital budgets. See N.J.S.A. 58:4-11 and -12. The Fund provides a means for the owner of a private dam, such as a lake club or association, to secure a loan for the rehabilitation project. N.J.S.A. 58:4-12. To ensure repayment of the loan, N.J.S.A. 58:4-12 provides for a private and public partnership between the Beach Club and the Township -- with the

17

Township acting as the collector of the debt through the use of its municipal power to assess properties benefitted by the project.

To that end, N.J.S.A. 58:4-12(d)(1) states:

> Loans awarded under this section to owners of private dams or lake associations shall require local government units to act as co-applicants. The cost of payment of the principal and interest on these loans shall be assessed, <u>in the same manner as provided for the assessment of local improvements generally under chapter 56 of Title 40 of the Revised Statutes</u>, against the real estate benefited thereby <u>in proportion to and not in excess of the benefits conferred</u>, and such assessment . . . shall be a first and paramount lien upon the real estate assessed to the same extent, <u>and be enforced and collected in the same manner, as assessments for local improvements</u>.
>
> [(emphases added).]

For our purposes, N.J.S.A. 58:4-12(d)(1) provides two important features: (1) the cost of an improvement funded under this section must be assessed "in the same manner as provided for the assessment of local improvements generally under chapter 56 of Title 40 of the Revised Statutes," and (2) the assessment against the properties benefitted must be "in proportion to and not in excess of the benefits conferred." The plain language of the statute makes clear that the Legislature intended to incorporate the law governing the special assessments for <u>local</u> improvements under Title 40 into

18

Title 58's assessment for private dam and lake improvements financed by public funds.

By that act of incorporation, the Legislature did not have to repeat the procedural and substantive standards for the imposition of an assessment already set forth comprehensively in Title 40. Significantly, nothing in Title 40 is in conflict with the provisions of N.J.S.A. 58:4-12, including the requirement that property assessed be benefitted by the improvement and that the assessment be proportional to the benefit conferred.

The Township understood that the special assessment process was governed by both Title 58 and Title 40. For example, the co-borrower agreement between the Beach Club and Township stated that "[t]he cost of the payment of the principal and interest on the Loan may be assessed, pursuant to the Special Assessment Ordinance in accordance with N.J.S.A. 58:4-12 et seq., N.J.A.C. 7:24A-1.1 et seq., and N.J.S.A. 40:56-1." Additionally, Ordinance 16-03 authorized the Township to impose a special assessment "against the benefitted properties, pursuant to N.J.S.A. 40:56-1 et seq. and N.J.S.A. 58:4-12 et seq. in accordance with the Special Assessment statutes including but not limited to N.J.S.A. 40:56-27." Ordinance 16-04 established the Board of Assessment Commissioners "in accordance with N.J.S.A. 40:56-1 et seq.," to assist the Township Council, evidently because N.J.S.A. 58:4-12 makes no

19

provision for a Board of Assessment Commissioners. Finally, the Holzhauer report, which the Township Council adopted, expressly relied on and quoted from N.J.S.A. 40:56-27 in determining and identifying the benefitted properties.

We therefore turn to the procedural and substantive standards set forth in Title 40 governing the imposition for assessments on properties benefitted by local improvements. See N.J.S.A. 40:56-1 to -64. "A local improvement is one, the cost of which, or a portion thereof, may be assessed upon the lands in the vicinity thereof benefited thereby." N.J.S.A. 40:56-1 (emphasis added). A municipality is authorized to appoint "commissioners to make the assessments for benefits for [a local] improvement," N.J.S.A. 40:56-22, and those commissioners are empowered to "make a just and equitable assessment of the benefits conferred upon any real estate by reason of [the local] improvement having due regard to the rights and interests of all persons concerned, as well as to the value of the real estate benefited," N.J.S.A. 40:56-26.

N.J.S.A. 40:56-27 describes in detail how the assessment must relate to the benefit received:

> All assessments levied under this chapter for any local improvement shall in each case be as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement.

20

We do not discern any real distinction between the language above and N.J.S.A. 58:4-12(d)(1)'s language stating that the imposition of an assessment on property must be "in proportion to and not in excess of the benefits conferred" by the dam improvement. Title 40 also sets forth procedural guideposts. For instance, "[a]ll assessments for local improvements shall be presumed to have been regularly assessed and confirmed . . . until the contrary be shown," N.J.S.A. 40:56-33, and ultimately a reviewing court must determine whether the assessment is "just and fair," N.J.S.A. 40:56-54; see also 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 597 (1999) (stating that special "assessments are 'presumptively correct and the taxpayers [have] the burden of overcoming that presumption by clear and convincing evidence'" (alteration in original) (quoting McNally v. Township of Teaneck, 75 N.J. 33, 44 (1977))).

Because N.J.S.A. 58:4-12(d)(1) incorporates the provisions of Title 40 that relate to "the assessment of local improvements" and because this is our first occasion to address N.J.S.A. 58:4-12(d)(1), the case law construing the relevant provisions of Title 40 offers guidance.

B.

The justification for any special assessment levied for the purpose of financing a local improvement, N.J.S.A. 40:56-27, or an improvement to a

21

privately owned dam, N.J.S.A. 58:4-12, is that the assessed property has received a benefit from the improvement.  See Gabriel v. Borough of Paramus, 45 N.J. 381, 384 (1965) ("The foundation of the power to levy a special assessment is the benefit or enhancement of value which the improvement confers.").  Special assessments may be imposed on properties for such local improvements as the installation of sewage and water lines, street paving and curbing, and construction of parking facilities.  See N.J.S.A. 40:56-1 and -1.1; see also 2nd Roc-Jersey Assocs., 158 N.J. at 604 (upholding a special assessment of commercial properties within a special improvement district).  If there is no "peculiar benefit, advantage or increase in value" to the property from the improvement, then there is no basis for imposing an assessment.  See N.J.S.A. 40:56-27.

The benefit to the assessed property "must be certain rather than speculative, although it may arise in the future."  2nd Roc-Jersey Assocs., 158 N.J. at 593-94 (noting that an assessment for an improvement is proper even if "the benefit is not presently apparent").  "The fact that a landowner has no present, immediate use for the improvement is . . . immaterial, so long as the use of the improvement is accessible and available to the land sought to be assessed for any use to which the property may legitimately be put."  Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 68-69 (1969).

Ordinarily, "the benefit to the specific property must be substantially greater than to the public in general." 2nd Roc-Jersey Assocs., 158 N.J. at 592-93.

An assessment, moreover, must be proportionate to the benefit conferred on the property. The proportionality requirement is measured by a standard of reasonableness, not by scientific precision. See N.J.S.A. 58:4-12(d)(1) ("in proportion to . . . the benefits conferred"); N.J.S.A. 40:56-27 ("as nearly as may be in proportion to"); 2nd Roc-Jersey Assocs., 158 N.J. at 596. "So long as [the] owner is required to pay [no] more than the benefit received and the method of determining the amount of that benefit is reasonable and applied uniformly to all property owners, the statutory mandate has been satisfied." McNally, 75 N.J. at 46.

The test often used to determine the value of the benefit and the amount of the assessment is "the difference between the market value of the land before and after the improvement." Id. at 42; see also McQueen v. Town of West New York, 56 N.J. 18, 23 (1970) (stating that the "'[b]enefit' is the increment of value to land affected by improvement. It represents the difference between the market value of the lands before the improvement and the market value of the land immediately after the improvement" (quoting In re Pub. Serv. Elec. & Gas Co., 18 N.J. Super. 357, 365 (App. Div. 1952))).

23

Nevertheless, no inflexible formula applies, nor is "mathematical precision" required. See 2nd Roc-Jersey Assocs., 158 N.J. at 596, 601; McQueen, 56 N.J. at 24. Another assessment methodology may be used, so long as the result is a "just and equitable assessment of the benefits conferred." McQueen, 56 N.J. at 24; see also 2nd Roc-Jersey Assocs., 158 N.J. at 601-02 (finding that "[t]he method of assessment must necessarily be adapted to the benefit conferred" and that other methods that are "just and equitable" or "rational and appropriate" may be used). Although a fair-market-value approach may be suitable for an improvement such as the installation of a water or sewage line, see Ridgewood Country Club, 55 N.J. at 68-71, it may not be suitable for determining the benefit to commercial properties located within a special improvement district, see 2nd Roc-Jersey Assocs., 158 N.J 601-02 (noting that the standard fair-market-value approach was not applicable because "the nature of the benefit [was] general and intangible, and the quantum of the benefit [was] imprecise").

The value of the benefit conferred on the assessed property by the improvement must be "established by the conventional method of expert testimony or by some other reliable proof." See McNally, 75 N.J. at 42 (emphasis added) (citing McQueen, 56 N.J. at 24). To state the obvious, a municipality cannot impose an assessment based on an arbitrary methodology.

See Ridgewood Country Club, 55 N.J. at 69-70 (finding that the assessment was "arbitrary and unreasonable" because the record did not contain "proof by any qualified witness of any such net dollar enhancement in value").

IV.

The Holzhauer report, which was adopted by the Assessment Commission and the Township Council, did not comport with the statutory mandates and the governing case law. Holzhauer did not apply a fair-market-value methodology to determine the value of the subject properties before and after the dam improvement, as he stated in his proposal letter to the Township.[6] Although Holzhauer and the Township were not bound to follow the traditional fair-market-value approach, they were required to employ a rational and non-arbitrary methodology.

_____

[6] Holzhauer stated that his report would

> contain valuation information for each property (base land value with and without consideration of the dam improvement), . . . the identification of each property, purpose and function of the appraisal report, date of valuation, identification of property rights appraised, neighborhood characteristics, zoning, site data, highest and best use conclusion, a discussion of the appraisal technique(s) considered and used in the valuation process, a presentation of comparable market data for each approach considered, and a reconciliation of the data into two separate estimates for each property as of the appraisal date.

Holzhauer simply concluded that property owners listed within the geographical ambit of the Beach Club's bylaws received a "benefit" because of "their right, by property ownership and/or interest, to become a member of the club and therefore have access to the lake and other amenities." Plaintiffs suggest that the Beach Club randomly placed their properties in the "reserve," pointing to properties an equal distance from the lake, whose owners are not automatically eligible for membership in the Beach Club. Surely, if membership eligibility increased the value of property, that seemingly would indicate an ascertainable and tangible benefit, even to plaintiffs, none of whom were members of the Beach Club or intended to become members. But Holzhauer did not conduct any analysis showing that plaintiffs' outer-rim properties received such a benefit because of Beach Club eligibility.

Additionally, there is lack of certainty whether all property owners within the Beach Club "reserve" are, in fact, automatically eligible for membership. One property owner spoke out at a Township Council meeting, stating that she was denied membership because she was told the Club was not taking any new members. Certainly, if an assessment were premised on membership eligibility, the Township Council should have resolved the issue of whether membership in the Beach Club was automatic for property owners within the "reserve" who applied for and accepted the terms of membership.

26

Indeed, the trial court suggested at the action in lieu of prerogative writs hearing that exposure of a property owner to an assessment because of presence within the "reserve" might even hinder the marketability of property.[7] Such questions arise here only because of the lack of a market-value study or some other reliable methodology establishing that plaintiffs received a "certain rather than [a] speculative" benefit. See 2nd Roc-Jersey Assocs., 158 N.J. at 593.

Even if we assume that plaintiffs were eligible to become members of the Beach Club and that such membership conferred on them a benefit from the dam restoration project, the Holzhauer report does not set forth a rational methodology for the assessments imposed on plaintiffs' properties. Holzhauer assumed that lakefront properties received the greatest benefit, lake view/access properties a lesser benefit, and all other properties furthest from the lake and in the "reserve" the least benefit. That assumption has some logical and perhaps facial appeal. But Holzhauer did not explain how he arrived at assigning value shares to each category or how he came to the result

---

[7] During the public comment period before the Township Council, one property owner within the "reserve" stated that he had purchased his property several months earlier and had just received the approximately $14,000 assessment bill for the dam project -- an additional cost of which he was unaware when he had purchased his home. For that reason, he asked the Township Council to exclude his property from the assessment.

that the fifteen-year special assessment for lakefront properties is $26,263 (value share 2.0), lake view/access properties is $19,967 (value share 1.5), and all other properties is $13,131 (value share 1.0). Holzhauer did not refer to any reliable methodology to support his opinion. Special assessments cannot be imposed on properties based on arbitrary categorizations or speculative valuations.

Although we do not import the "net opinion" rule used in court proceedings into this municipal/administrative setting, that rule simply stands for the proposition that an expert opinion must have a rational basis. Townsend, 221 N.J. at 53-54. For that reason, the "net opinion" rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid. (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)). Experts must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

The general conception of the "net opinion" rule has long guided our local improvement assessment jurisprudence, which requires that a special assessment be founded on "expert testimony or by some other reliable proof," see McNally, 75 N.J. at 42, or "proof by any qualified witness" that is not "arbitrary or unreasonable," see Ridgewood Country Club, 55 N.J. at 70.

The Holzhauer report did not address in any meaningful way the statutory requirements -- that the special assessment imposed on plaintiffs' properties for the dam rehabilitation project be "in proportion to and not in excess of the benefits conferred," see N.J.S.A. 58:4-12(d)(1), or "be as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value . . . by reason of [the dam] improvement," see N.J.S.A. 40:56-27.

Ultimately, it is the role of our courts to "determine whether or not the assessment . . . is a just and fair assessment," see N.J.S.A. 40:56-54, after giving due regard to the presumption of validity that attaches to the municipal action in this case, see N.J.S.A. 40:56-33.

The Holzhauer report, on which the Township relies, does not set forth any methodology or any sound analysis to justify the special assessment imposed on plaintiffs' properties. We therefore conclude that the presumption of validity accorded to Resolution 6-1 has been overcome by clear and convincing evidence. See 2nd Roc-Jersey Assocs., 158 N.J. at 597. Because the special assessment cannot be sustained based on the record before us, we must invalidate Resolution 6-1 as an arbitrary and unreasonable law.

## V.

For the reasons explained, we reverse the judgment of the Appellate Division. We remand this matter to the Sparta Township Council to start anew the process of establishing a special assessment for the repayment of the loan that funded the dam rehabilitation project -- guided by the applicable statutes and the opinion of this Court.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.